FRANKLIN E. COKER, Plaintiff, v. ALFRED SAMMONS, THE BOARD OF COMMISSIONERS OF THE TOWN OF CHESWOLD and the TOWN OF CHESWOLD, Defendants.

(*April* 24, 1962.)

LYNCH, J., sitting.

*Harrison F. Turner* for Plaintiff.

*George R. Wright* and *David P. Buckson* for Defendants.

Superior Court for Kent County, No. 230, Civil Action, 1959.

LYNCH, J.:

Plaintiff has brought suit to recover damages for an assault and battery, allegedly committed by the defendant, Alfred Sammons, on May 23, 1959. The complaint charges, in substance, that Sammons, a member of the Town Police of the defendant Town of Cheswold, was on duty "for said Town in his capacity as Town Policeman" on "the date afore-

said", in a police cruiser automobile, owned by the Town, in front of the "Just Us" Club. The complaint further charges, at about 11:30 P.M. on that date plaintiff was a part of "a mixed group of people standing in conversation in front of the 'Just Us' Club on the Saulsbury Road about one and one-half miles outside of the corporate limits of the Town of Cheswold". Continuing, the complaint then charged that while Sammons was at the place and time aforesaid he committed an assault and battery on the plaintiff, by discharging a loaded gun, causing the bullet to pass through the hand of the plaintiff, with resulting personal injuries and damages.

For a reason which is not disclosed—and this is most difficult to comprehend—plaintiff after charging in his complaint (¶ 8) that Sammons committed "an assault and battery" upon the plaintiff, proceeded to allege (¶ 10) "that the Defendant, the Board of Commissioners of the Town of Cheswold, was negligent" in five separate respects. Having thus laid out the facts of his case, plaintiff, in paragraph 11 of the complaint, proceeded to allege:

"That the Defendant, The Town of Cheswold, was negligent through imputation of the negligence of the Defendant, Alfred Sammons, its agent and employee."

The Charter of the Town of Cheswold is to be found in Volume 29, *Del. Laws*, Ch. 149. This Charter (§ 1) provides that "the citizens of the Town of Cheswold, shall be a body politic and corporate, in fact and in law, by the name of 'The Town of Cheswold,' and by the name shall sue and be sued, * * *"; it provides for the election of five Commissioners and the selection of Town Policemen; there is no provision by which the General Assembly purported to permit the Town, its officers, or employees to exercise its powers or to act beyond the territorial limits of the Town.

The complaint names Alfred Sammons, "The Board of Commissioners of The Town of Cheswold" and "The

Town of Cheswold" as defendants; the individual members of the Board are not named or otherwise identified in the complaint. Parties should be fully identified on the record; they must be designated by name and not by a mere description, 67 *C. J. S.* Parties § 94.[1] Consequently, if it was plaintiff's intent to hold the individual members of the Board of Commissioners individually responsible for the acts of Sammons, plaintiff did not in any manner so act as to make his intent effective; this is particularly evident since they were not served with process. The allegations of paragraph 3 of the complaint are wholly inadequate if it was plaintiff's intention to make these Commissioners parties to this suit inasmuch as it does not give any clear idea that the individual members of the Board of Commissioners were the target of plaintiff's suit. There is no "body politic" or municipal corporation in the State of Delaware with the name "The Board of Commissioners of the Town of Cheswold". For these reasons they will not be regarded as defendants in this civil action.

It is to be noted that the summons, served by the Sheriff of Kent County, made the following return:

"Served the within writ of summons upon The Board of Commissioners of the Town of Cheswold and The Town of Cheswold by leaving in the hands of Fred Willey Mayor of Cheswold and Arthur Armstrong, member of The Board of Commissioners a true copy of the writ together with a copy of the plaintiff's complaint this 16th day of October A.D. 1959." The complaint does not allege nor does the writ of summons state that Mayor Willey or Arthur Armstrong were parties defendant in their individual capacity; moreover, the return negatives any thought that they were served in their individual capacity.

---

[1] 39 *Am. Jur.*—Parties—§ 6 is to the same effect.

The three other members of the Board of Commissioners were neither named defendants nor were they served with process; the record of the case does not show that they ever entered an appearance in their individual capacities.

These matters are mentioned to demonstrate the reasoning behind the Court's holding that the five members of the Board of Commissioners are not defendants in this civil action. There are no legal principles which would justify retention of the Board of Commissioners as a defendant since the Board has no legal entity. Therefore, I re-state that the Court will consider that the plaintiff in this action named but two defendants: (1) Alfred Sammons and (2) The Town of Cheswold. The case will be considered and determined on such factual and legal bases.

The defendants have moved for summary judgment. The Town of Cheswold has asserted the defense of "sovereignty" under the motion for summary judgment, basing its contention on the prior ruling of this Court in *Kelley v. Mayor and Council of Wilmington*, 5 *W. W. Harr.* 9, 156 *A.* 867 (1931). This case is still good law, but since it otherwise so clearly appears on the face of the complaint (1) that Sammons, the Town Policeman, is alleged to have committed an assault and battery; and (2) that such act was committed beyond the Town limits of Cheswold, and thus the Town is not liable, the Court is reluctant to consider the applicability of the defense asserted by the Town. It is, in my opinion, undesirable to consider the application of the defense of sovereignty in a case involving a municipal corporation if the case can be determined on other legal theories so clearly showing that the Town is not liable under the circumstances alleged.

It is well settled, see Vol. 2, *McQuillan on Municipal Corporation*, 3d Ed., § 10.07, p. 590; *Rhyne, Municipal Law*, Ch. 13, § 13-13; 62 *C. J. S.* Municipal Corporations § 141, p. 283 and 37 *Am. Jur.*—Municipal Corporations— § 284, p. 917, that the operation of the powers of a municipal

corporation and the authority of its officers and employees cease at the municipal boundaries and they cannot be exercised beyond its limits, without clear and plain manifestation of legislative intent. As has been noted, The Town of Cheswold is not authorized by the General Assembly to exercise its powers extraterritorially.

 It is also well settled, Vol. 18, *McQuillan on Municipal Corporation*, 3d Ed., §§ 53.79 and 53.80; *Rhyne, Municipal Law*, Ch. 30, § 30-2, p. 734, f.n. 32, 33 and 34; 63 *C. J. S.* Municipal Corporations § 761, p. 54 and 38 *Am. Jur.*—Municipal Corporations—§ 620, p. 318, that municipalities are not liable for torts committed by their employees, particularly where, as here, such torts are committed beyond the territorial limits of the municipality. In 63 *C. J. S.* Municipal Corporations § 761, at p. 54, it is stated:

"* * * that a municipal corporation is not liable for the unauthorized acts of its officers or employees, and that it may not be compelled to respond in damages for their wrongful acts or omissions in matters beyond the scope of their employment, or which are *ultra vires*. In other words, in order to render a municipal corporation liable for the acts of its agents, it must appear that such acts were expressly authorized by the municipal government or that they were performed bona fide in pursuance of a general authority to act for the municipality * * *."

Cases illustrating the foregoing rules of law and their applicability to the facts alleged in the case *sub judice* are *Woodward v. Seattle*, 140 *Wash.* 83, 248 *P.* 73 (1926); *Leisgang v. Cincinnati*; 57 *Ohio App.* 513, 15 *N. E.* 2d 158 (1937); *City of Coral Gables v. Giblin, Fla. App.*, 127 *So.* 2d 914, 918-919 (Fla. Dist. Ct. App., 1961) and *Valdez v. City of Las Vegas*, 68 *N. M.* 304, 361 *P.* 2d 613, 614 (1961).

In the *Leisgang* case, *supra*, the City Police car, belonging to Cincinnati, was involved in an automobile accident

"outside the limits of the city of Cincinnati". In the *Giblin* case, *supra*, the tortious conduct on the part of the policeman for the city of Coral Gables for which suit was brought, had been perpetrated "within the corporate limits of the City of Miami, Florida". In the *Valdez* case, *supra*, the misconduct on the part of the Las Vegas police officer apparently took place on private property. The New Mexico Supreme Court after reviewing a number of its previous decisions, concluded[2] by saying: (361 *P*. 2d at 614)

"* * * in order for the tortious act to become that of the municipality and not of the employee the specific act must have been done by authority of the municipality or in execution of its orders. * * *. On the other hand, if a police officer who is an employee of the city exceeds his authority or acts outside his orders he alone is responsible when injuries result. * * *."

An Order may be presented granting the motion for summary judgment as to the Town of Cheswold but denying the motion so far as it may be said to have been asserted on behalf of the defendant Sammons. The Order should also provide for the striking of the language "The Board of Commissioners of The Town of Cheswold" from the caption and several paragraphs of the complaint, wherever such language appears.

---

2A New Mexico statute was under construction in the cited case. The statement of law, quoted above, is in keeping with the law generally on the subject and since the Court's language is so clear, I preferred to cite and quote the language rather than to use language of like meaning to be found in the treatises and in other cases.