**INTERFAITH HOUSING DELAWARE, INC., Benjamin R. Pearson, George A. Cheatwood, Deborah A. Cheatwood, and Carolyn A. Seaton, Plaintiffs,**

v.

**The TOWN OF GEORGETOWN, Joseph W. Booth, John B. Roach, Jr., Sue M. Barlow, and Leroy B. Tyndall, Defendants,**

and

**David M. Bloodsworth and Allan Kujala, Nominal Defendants.**

Civ. A. No. 93–31 MMS.

United States District Court, D. Delaware.

Jan. 12, 1994.

Lawrence A. Hamermesh, and Kurt M. Heyman, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE (James F. Waehler, of Tunnell & Raysor, Georgetown, DE of counsel), for plaintiffs.

Roger A. Akin, and Nanci B. Scoblionko, of Sawyer & Akin, P.A., Wilmington, DE for defendants and nominal defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiffs, Interfaith Housing Delaware, Inc. ["Interfaith"], Benjamin J. Pearson, George A. Cheatwood, and Carolyn A. Seaton, have filed suit against defendants, the Town of Georgetown ["Georgetown"], the individual Town Council members, Joseph W. Booth, Mayor of Georgetown, and John B.

Roach, Jr., Sue H. Barlow, Leroy B. Tyndall, and nominal defendants David M. Bloodsworth and Allan Kujala, alleging they have violated plaintiffs' constitutional and statutory rights by imposing illegal and unreasonable conditions upon Interfaith's construction of a low-to-moderate income housing development known as Bedford Crossings. Currently before the Court is plaintiffs' motion to compel discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. Docket Item ["D.I."] 69. Specifically, plaintiffs move that the Court: (1) declare defendants have waived any attorney-client privilege as to communications on the subject of Georgetown's authority to impose the conditions; (2) compel defendants to produce documents relating to Georgetown's authority to impose the conditions; and (3) award plaintiffs their legal fees, expenses and costs. For the reasons which follow, plaintiffs' motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

In August of 1991, Interfaith entered into a contract to purchase land in Georgetown, Delaware, for the purpose of constructing a 253 unit low-to-moderate income housing development. At that time, the land was zoned MR1, which allowed for multi-family residential housing. D.I. 1 at ¶ 14.

On July 29, 1992, the Georgetown Planning Commission gave final approval to Interfaith's site plan. Plaintiffs assert that after the Planning Commission approves a site plan, Georgetown's practice has been to consider the plan at the next Town Council meeting, where the Town Council typically adopts the Planning Commission's recommendation. *Id.* at ¶ 21. Plaintiffs allege, however, that defendant Joseph W. Booth ["Booth"], who then presided over the Town Council as Mayor of Georgetown, refused to place the plan on the agenda of the next Town Council meeting. Rather, Booth called for a public hearing. *Id.* at ¶ 22. At the public hearing, Georgetown residents opposed the Interfaith site plan and sought to have conditions imposed upon the proposed development at Bedford Crossings.

Plaintiffs assert that after the public hearing, defendants Leroy B. Tyndall ["Tyndall"] and Sue H. Barlow, members of the Georgetown Town Council who had previously approved the Interfaith site plan in their capacities as members of the Planning Commission, decided they would not ratify the plan without conditions. *Id.* at ¶ 24. At the November 18, 1992 Town Council meeting, defendant John B. Roach, Jr., a town councilperson, introduced twelve conditions for approval of the Bedford Crossings final site plan.[1] Mayor Booth and Georgetown's Town Council approved the plan with the twelve conditions. Plaintiffs allege the conditions imposed are arbitrary and effectively prevent the construction of Bedford Crossings. *Id.* at ¶¶ 29–31. Plaintiffs further allege the conditions were racially motivated and imposed without authority. *Id.* at ¶¶ 38–62.

During his deposition, defendant Tyndall offered to explain a statement which had

---

1. The twelve conditions included:

 1. Installation of a six foot perimeter fence around the property line before construction began.
 2. Sidewalk with curb, gutter, and drainage ten feet from existing public streets before occupancy.
 3. Exterior lighting on poles with concrete foundations every 75 feet at a minimum height of 20 feet.
 4. Dense evergreens to be planted outside and around the perimeter fence no more than eight feet apart with a minimum height of six feet.
 5. Complete and approved recreation plan, including facilities and equipment, prior to beginning construction.
 6. All structures east of main interior road not to exceed one story.
 7. Interior access roads and parking lots with lanes exceeding 50 feet must have a speed limit not exceeding 15 M.P.H. and speed bumps. No stopping, standing, or parking on such roads.
 8. Project management on site 24 hours each day, seven days each week and accessible to both the general public and residents.
 9. Storm water storage areas, open ditches, and utilities designed to prohibit entry or access by unauthorized personnel.
 10. Designation of proposed stages of construction with start and completion dates for each stage.
 11. Site plans approval valid only six months from proposed start date for each phase.
 12. A performance bond or other cash security to guarantee compliance with all conditions.

 D.I. 1 at 9–10.

been attributed to him in a newspaper article. The article reported Tyndall said "town police report that most problems at Georgetown Apartments [a low-to-moderate income housing complex] occur after management leaves for the day." Bruce Pringle, *Bedford Crossing to be reconsidered,* News Journal, Jan. 10, 1993 at B5. The deposition proceeded as follows:

A Well, that was Section 8 in the stipulations [the conditions imposed by Georgetown's Town Council], to have management 24 hours a day. And at this meeting, we had to eliminate that Section 8 or stipulation 8 from the proposals.

Q You had to eliminate?

A Yes.

Q Why did you have to eliminate that from the proposals?

A On advice of counsel; it was not within our jurisdiction, that was management concern....

D.I. 69 Exhibit ["Ex."] C, at 85. Counsel for defendants did not assert the attorney-client privilege or object that it had been violated. *See id.*

Plaintiffs argue defendant Tyndall's statement constitutes a waiver of the attorney-client privilege on the subject matter of the Town Council's authority to impose the twelve conditions on the Bedford Crossings plan. Based on this asserted waiver, plaintiffs request that the Court compel defendants to produce correspondence from, and handwritten notes of, Georgetown's Town Solicitor.[2] *Id.* at ¶¶ 7–8. Defendants respond that (1) Tyndall's statement did not effect a waiver of the attorney-client privilege, and (2) a joint defense privilege applies so that waiver is not possible "absent the consent of all parties to the defense." D.I. 70. In reply, plaintiffs cite principles of corporate agency law for the proposition that Tyndall's statement waived the Georgetown Town Council's attorney-client privilege. D.I. 71 at ¶¶ 7–8.

## II. DISCUSSION

■ Federal Rule of Evidence 501 states: Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to its statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501. Plaintiffs' motion to compel seeks documents relating to defendants' defense that the Georgetown Town Council had the authority to impose the twelve conditions upon the Bedford Crossings development. The scope of a local government's authority is a matter of state law. *See* 2 Eugene McQuillin, *Municipal Corporations* §§ 4.01–4, 4.05, 4.132 (3d rev. ed. 1979); E.C. Yokley, *Municipal Corporations* §§ 11, 59, 60 (1956); *cf. Missouri v. Jenkins,* 495 U.S. 33, 51, 110 S.Ct. 1651, 1663, 109 L.Ed.2d 31 (1990) (federal courts must respect a local government where it is ready and willing to act, but for the operation of state law curtailing municipal power). It follows that the authority of Georgetown's Town Council to impose the conditions on Bedford Crossings is a matter of state law and the attorney-client privilege issues raised by defendants' opposition to the motion to compel must be determined in accordance with Delaware law.

■ The current scope and requisites of the attorney-client privilege in Delaware are defined in Delaware Uniform Rule of Evidence 502. Rule 502(b) provides:

A client has a privilege to refuse to disclose and prevent any other person from

2. Specifically, plaintiffs seek to compel production of the following documents which defendants assert are privileged: (1) an October 12, 1992 letter from the Town Solicitor to Mayor Booth; (2) a November 16, 1992 letter from the Town Solicitor to Mayor Booth and Georgetown's Town Council; and (3) the Town Solicitor's handwritten notes from the January 11, 1993 Town Council executive session. D.I. 69 ¶ 7.

disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or the representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Del.U.R.E. 502(b). This rule differs from the federal rule of attorney-client privilege, and to the extent it differs, the Delaware rule departs from efforts in other jurisdictions to narrow the scope of the privilege. *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, 523 A.2d 968, 971 (Del.Super.Ct.1986). Nonetheless, the party asserting the attorney-client privilege has the burden of proving it applies to a particular communication.[3] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del.1992).

Plaintiffs' motion to compel presents the following issues which the Court will address seriatim: (1) the identity of the Town Solicitor's client or clients; (2) whether Tyndall's statement effected a waiver of the attorney-client privilege; (3) the effect of agency principles on the attorney-client privilege; and (4) the existence of a joint defense or common interest defense privilege under Delaware law.

### 1. Identity of the Client(s)

■ Delaware Uniform Rule of Evidence 502(b) begins: "A *client* has a privilege...." Del.U.R.E. 502(b) (emphasis added). The first question the Court must consider, therefore, is the identity of the Town Solicitor's client. Rule 502(a)(1) provides that:

A "client" is a person, public officer or corporation, association or other organization or entity, either public or private, who

is rendered professional legal services by a lawyer, or who consults a lawyer with a view of obtaining professional legal services from him.

Del.U.R.E. 502(a)(1). It is fundamental that an entity, such as Georgetown's Town Council, may be a client for purposes of the attorney-client privilege. *Id.* It is equally fundamental, however, that an entity can only act through natural persons. The tension between these two precepts can make determining the precise identity of a client difficult when the client is an entity. *See generally,* John W. Gergacz, *Attorney–Corporate Client Privilege* (2d ed. 1990); *cf. Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir.1970), *cert. denied sub nom., Garner v. First American Life Ins. Co.*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (in analyzing attorney-client privilege issues, "[c]onceptualistic phrases describing the corporation as an entity ... are not useful tools of analysis."). This is such an instance.

■ Plaintiffs have sued not only the Town of Georgetown, but the individual members of its Town Council. *See* D.I. 1. The Court must, therefore, examine the legal relationship that exists between the Town Council and its individual councilmembers in evaluating attorney-client privilege issues. *See* Del.U.R.E. 502(b)(3); *Kirby v. Kirby*, No. 8604, 1987 WL 14862 (Del.Ch. July 29, 1987) (LEXIS, States library, Del file) (holding the privilege belonged to both the corporate client—a closely held, charitable foundation—and its directors, because at the time of the privileged communication, the directors, collectively, were the client); *In re Grand Jury Investigation*, 918 F.2d 374, 386 n. 20 (3d Cir.1990) (presence of client's agent or person with "commonality of interest" with the client will not vitiate the attorney-client privilege). The individual councilmembers are all agents of the Town Council and share common interests with the Town Council regarding the proposed Bedford Crossings development. Participation of individual councilmembers in consultations with the Town

---

**3.** Plaintiffs do not contend the attorney-client privilege does not apply to the documents subject to the motion to compel. Rather, plaintiffs assert the privilege has been waived. *See* D.I. 69,

**71.** Absent any reason to find to the contrary, the Court is satisfied the documents plaintiffs seek fall within the purview of the privilege.

Solicitor, therefore, does not waive the attorney-client privilege.

▮ Not only does the presence of individual councilmembers not waive the privilege, but confidential communications between councilmembers and the Town Solicitor may also be protected by the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 394–97, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981); *Bruce v. Christian,* 113 F.R.D. 554, 560 (S.D.N.Y.1986) ("Attorney-client privilege extends to any employee communicating on matters within the scope of his employment when that employee is aware that he is being questioned in confidence in order for his employer to obtain legal advice."). For the Town Council to obtain legal advice regarding Bedford Crossings, individual councilmembers must communicate with the Town Solicitor. If the Town Council does not waive its privilege, therefore, communications between the Town Solicitor and individual councilmembers regarding the Bedford Crossings development are protected by the attorney-client privilege and cannot be discovered.

▮ Each member of Georgetown's Town Council has an obligation to bring independent judgment to bear on the issues confronting the town. Because of their joint obligations and commonality of interest, the members of the Town Council share in its attorney-client privilege when a third party sues both the town and each councilmember. *See Schwartz v. Broadcast Music Inc.,* 16 F.R.D. 31, 32 (S.D.N.Y.1954) (each individual member of an unincorporated association is a client of the association's lawyer). In this limited sense, the attorney representing an entity represents multiple clients.[4]

## 2. Waiver of the Attorney–Client Privilege

Plaintiffs assert defendant Tyndall's statement constituted a waiver of the attorney-client privilege with respect to the Town Council's authority to adopt all twelve conditions imposed upon the Bedford Crossings development. Defendants, citing *International Business Machines Corporation v. Sperry Rand Corporation,* 44 F.R.D. 10, 13 (D.Del.1968), respond that Tyndall's statement did not effect a waiver of the attorney-client privilege because it was not a "clear and intentional" waiver. D.I. 70 at ¶ 5.

▮ Under Delaware law, it "is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications." *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 825 (Del.1992) (citing Del.U.R.E. 510 and *Texaco, Inc. v. Phoenix Steel Corp.,* 264 A.2d 523 (Del.Ch.1970)). Indeed, Delaware Uniform Rule of Evidence 510 provides that a privilege is waived if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Del.U.R.E. 510. The extent of the waiver, however, is limited to the subject matter of the disclosed communication. *Citadel Holding Corp.,* 603 A.2d at 825.

▮ Tyndall's statement was completely voluntary within the context of Rule 510. In Delaware, waiver of the attorney-client privilege results from public disclosure of information that was formerly confidential, provided the disclosure was not erroneously compelled and there was an opportunity to assert the privilege.[5] *See* Del.U.R.E. 511 (claim of privilege not defeated if disclosure was erroneously compelled or if there was no opportunity to claim the privilege); *Citadel Holding Corp.,* 603 A.2d at 825. Because Tyndall disclosed a significant part of the

---

4. The Court's holding addresses only the situation where a third party sues both the town and each member of the town council. The town council can, of course, waive its privilege as well as any protection accorded communications from its council-members. Further, should a dispute arise between various members of the town council, the protection of the attorney-client privilege would not apply because the requisite commonality of interest would be lacking.

5. A narrow exception to this rule exists when, in the course of producing a heavy volume of documents and after taking reasonable precautions to guard against waiver, a party inadvertently produces a few documents which are attorney-client privileged. *See Monsanto Co. v. Aetna Casualty and Sur. Co.,* No. 88C–JA–118, 1991 WL 53822, at *1–2, 1991 Del.Super. LEXIS 114, at **1–3 (Apr. 8, 1991).

Town Solicitor's legal advice without compulsion or asserting the privilege, he waived the attorney-client privilege as to the subject matter of his statement.

Plaintiffs urge the Court order defendants to produce all documents relating to the subject matter of the Town Council's authority to adopt the twelve conditions imposed upon the Bedford Crossings development. The Court declines. At the time Tyndall waived the attorney-client privilege, he stated the Town Council had to "eliminate that Section 8 or stipulation 8 from the proposals." D.I. 69 Ex. C, at 85. Based on this statement, the Court holds the subject matter of Tyndall's waiver of the attorney-client privilege is limited to stipulation or condition 8; it does not reach the other stipulations or conditions.

### 3. Agency Principles and Waiver of the Privilege

Plaintiffs also assert Tyndall's statement constituted a waiver of the attorney-client privilege by Georgetown's Town Council. Specifically, plaintiffs note that municipal corporations, like private corporations, only act through their agents. A corporation's management, normally its officers and directors, has the power to waive the attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985). Similarly, plaintiffs argue, defendant Tyndall, a member of Georgetown's Town Council, waived the Town Council's privilege. D.I. 71 at ¶ 8.

■■■ The central question plaintiffs' argument presents is the scope of Tyndall's authority as a member of Georgetown's Town Council. An agent can only waive a corporation's privilege if the agent is acting within the scope of his or her authority. *See, e.g., International Boiler Works Co. v. General Waterworks Corp.*, 372 A.2d 176, 177 (Del.1977) ("an agent can bind the principal on an apparent authority basis only if the third person involved reasonably concludes that the agent is acting for the principal."); *Limestone Realty Co. v. Town and Country Fine Furniture & Carpeting, Inc.*, 256 A.2d 676, 678 (Del.Ch.1969) ("one dealing with an agent does so at his peril and must bear the burden of determining for himself the existence or non-existence of the agent's authority . . . ."); *Coker v. Sammons*, 180 A.2d 622, 624 (Del.Super.Ct.1962) (citing Corpus Juris Secundum, the court observed that "to render a municipal corporation liable for the acts of its agents, it must appear that such acts were expressly authorized by the municipal government or that they were performed bona fide in pursuance of a general authority to act for the municipality . . . ."). Thus, when a corporation's president makes a statement which waives the attorney-client privilege, the corporation's privilege is also waived. *See Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811 (Mo.App.1982). Likewise, the mayor of a city can effect a waiver of the city's attorney-client privilege. *Hollins v. Powell*, 773 F.2d 191, 196–97 (8th Cir.1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986).

■■■ Both a corporation's president and the mayor of a city have clear leadership positions which give them authority to bind their respective principals. One can reasonably assume a mayor or corporate president has the authority to secure an attorney for their principal's legal needs or decide to waive the attorney-client privilege. *See Vela v. Superior Court*, 208 Cal.App.3d 141, 255 Cal.Rptr. 921, 926 (Cal.), *review denied*, (police officer lacks authority to waive the city's attorney-client privilege); *Finkelstein v. Barthelemy*, 678 F.Supp. 1255, 1264 (E.D.La. 1988) (mayor is client of city's attorney). At the time he made his statement, however, Tyndall was not the mayor of Georgetown. Because Tyndall was merely one of the members of Georgetown's Town Council, the Court is not convinced that a reasonably prudent person would assume Tyndall had the authority to waive the privilege. Further, plaintiffs have presented no evidence of the scope of Tyndall's authority and whether it includes the authority to waive the attorney-client privilege. In light of Delaware's commitment to the attorney-client privilege and in the absence of evidence of the scope of Tyndall's actual or apparent authority to waive the privilege, the Court holds Tyndall's

statement is not effective as a waiver of the Town Council's attorney-client privilege.

### 4. The Common Interest Rule or Joint Defense Privilege

Finally, the Court must consider the effect of Tyndall's waiver of the attorney-client privilege on the other individual members of the Town Council. Defendants assert that even if Tyndall's statement waived the attorney-client privilege, the "common interest rule" or "joint defense privilege" prevents waiver absent the consent of all the defendants.[6] D.I. 70 at ¶ 7. In short, defendants argue that when an attorney represents two or more clients on a matter of common interest, all the clients must waive the attorney-client privilege to constitute a valid waiver.[7] The Delaware Supreme Court has not provided guidance as to the validity of this argument. The Court must, therefore, predict how the Delaware Supreme Court would resolve this issue were it called upon to do so. *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d 457, 459 (3d Cir.1993). In fulfilling this duty, the Court may consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980) (citations omitted).

While Delaware courts have not addressed the effect of waiver of privilege by one of two or more clients in a dispute with a third party, Delaware Uniform Rule of Evidence

502 provides that the attorney-client privilege belongs to the client and the client may waive it. Del.U.R.E. 502. This suggests that one client should not be forced unwillingly into a waiver of his or her privilege based on another client's decision to waive the privilege.

Other courts have considered the effect of waiver of privilege by one of two or more clients in a dispute with a third party. In considering this issue, the United States District Court for the District of Wyoming ruled that "waiver of privileges relating to information shared in joint defense communications by one party to such communications will not constitute a waiver by any other party to such communications." *Western Fuels Ass'n Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201, 203 (D.Wyo.1984). The court reasoned that this rule was necessary "to assure joint defense efforts are not inhibited or even precluded by the fear that a party to joint defense communications may subsequently unilaterally waive the privileges of all participants, either purposefully in an effort to exonerate himself or inadvertently." *Id.* This holding is in accord with the vast majority of other decisions which address the issue. *See, e.g., John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL–CIO*, 913 F.2d 544, 556 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991) (co-defendant could not waive appellee's attorney-client privilege); *Metro Wastewater Reclamation Dist. v. Continental Casualty Co.*, 142 F.R.D. 471, 478 (D.Colo.1992) (applying Colorado law in an environmental coverage dispute, the court ruled that for documents subject to a joint defense privilege, "a waiver

---

**6.** Clearly, this argument can only have merit, where as here, the entity has not waived its attorney-client privilege.

**7.** The issue confronted by many courts, often called a joint client or common interest exception, is whether communications between two or more clients and one or more lawyers on a matter of common interest waives the confidentiality requirement of the attorney-client privilege. Courts typically hold it does not effect a waiver. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(b)[06] (citing cases). However, when an attorney represents two or more clients on a matter of common interest and litigation between or among the

clients ensues, the attorney-client privilege is waived. *See* Del.U.R.E. 502(d)(5).

The issue before the Court, however, is as follows: an attorney provides advice to an entity client (E), composed of four members (C1), (C2), (C3) and (C4), on a matter of common interest. C1 discloses part of this advice to a third person (X). X brings suit against C1–C4 and E. The Court has ruled that under the facts of this case, C1–C4 share in E's attorney-client privilege and that C1 lacked authority to waive E's privilege. *See supra* sections 1, 3. The Court must also consider whether C1's waiver waives the privilege of C2–C4.

of the privilege requires the consent of all parties participating in the joint defense."); *Construction Unlimited Corp. v. Woodfield,* 1992 WL 157511, at *2, 1992 Conn.Super. LEXIS 1827, at *4 (June 15, 1992) (holding that when an attorney represents multiple clients and a dispute between the attorney and one client later occurs, "there is a waiver of the privilege, but only by the client asserting the liability."); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 29 (N.D.Ill. 1980), *later proceeding sub nom., Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 669 F.2d 490 (7th Cir.1982), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983) (holding in a class action derivative suit that "the joint defense privilege cannot be waived without the consent of all the parties to the defense, except in the situation where one of the joint defendants becomes an adverse party in a litigation.").[8]

The Court is aware of only one decision reaching a different result as to the effect of a waiver by one of two or more joint clients on the others' attorney-client privilege. In *Hamilton v. Hamilton Steel Corporation,* 409 So.2d 1111 (Fla.Dist.Ct.App.1982), several adult children required a performance bond to enter the boat building business. They either forged or obtained their parents' guarantee of the bond issued through the insurance company. After the business failed, the insurance company sued the parents, the children and their respective corporations. At a hearing before the trial judge, the single attorney, who purportedly represented all the defendants, announced a settlement in which the parents would pay $100,000.00. One child was present at the hearing and acquiesced to the settlement. Shortly thereafter, the parents allegedly discovered the existence of the settlement for the first time.

The Florida Court of Appeal ruled the attorney-client privilege did not apply. The court first noted that two exceptions to Florida's attorney-client privilege applied. There was a breach of duty by the attorney and a subsequent dispute between former joint clients. Offering additional reasons for its conclusion, the court stated that "once the privilege is waived, and the horse is out of the barn, it cannot be reinvoked." *Hamilton,* 409 So.2d at 1114 (citation omitted). Thus, the court concluded that once the settlement had been disclosed, some of the clients and the attorney could not later invoke the privilege as to the settlement's details. *Id.*

The Court finds the decision of the *Hamilton* court is not persuasive. It is the sole decision ruling that in a dispute with a third party, waiver of the attorney-client privilege by one joint client is effective against the other joint clients. Further, it appears the court was primarily concerned that it should not "countenance an announced settlement between counsel followed by escape therefrom, if one side arbitrarily reneges and then seals his counsel's lips by invoking the attorney-client privilege." *Id.* The court predicted defendants and/or their counsel would have redress against each other for any wrongdoing arising out of the proposed settlement. These factors suggest the Delaware Supreme Court would not be persuaded to adopt the *Hamilton* court's rule of waiver as to all the joint clients.

Scholarly writings which consider the matter also support the view that waiver by one party is not effective to waive the privilege of other parties. In discussing the law of privilege, one text observed:

> [T]he joint defense doctrine provides only that the privilege is not automatically waived in the case of joint consultations or exchanges of information; each client still retains the right voluntarily to waive the privilege with regard to his confidential communications with his own attorney. Furthermore, despite any commonality of interest that may exist between clients in such situations, a waiver by one does not

**8.** Likewise, in the criminal context, the Kansas Court of Appeals has ruled that "where several persons employ an attorney and a third party seeks to have communications made therein disclosed, none of the several persons—not even a majority—can waive this privilege." *State v. Maxwell,* 10 Kan.App.2d 62, 691 P.2d 1316, 1320 (1984). *Accord In re Grand Jury Subpoenas,* 902 F.2d 244, 248–50 (4th Cir.1990) (applying Virginia law, the court held "a joint defense privilege cannot be waived without the consent of all parties who share the privilege.").

effect a waiver as to the others' confidences.

Scott N. Stone & Ronald S. Liebman, *Testimonial Privileges*, § 1.55 Joint Defense, at 95 (1983). *Accord* 2 David W. Louisell & Christopher B. Mueller, *Federal Evidence*, § 210, at 787–88 (1985) ("each client (and of course all together) may invoke the privilege as against third parties").

 Based on Delaware's rules of evidence, the decisions of other jurisdictions, and scholarly works which discuss the issue, the Court predicts the Delaware Supreme Court would hold that when one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third party, that one individual's waiver does not effect a waiver as to the others' attorney-client privilege. Accordingly, the Court holds defendant Tyndall's statement did not waive the attorney-client privilege as to the other individual defendants.

### III. CONCLUSION

The Court holds Tyndall's statement waived his attorney-client privilege with respect to the Georgetown Town Council's authority to impose stipulation number eight on the Bedford Crossings development. Accordingly, defendants are ordered to produce any and all documents relating to the Town Council's authority to impose Stipulation 8. This evidence shall be admissible, however, only as to defendant Tyndall, and not as to any other defendant.[9] Finally, the Court denies plaintiffs' request for attorney's fees and costs. The issues presented by plaintiffs' motion to compel are complex, if not matters of first impression in Delaware. This complexity and novelty makes defendants' opposition to the motion substantially justified.

An appropriate order will issue.

---

9. The Court is aware of the difficulty its ruling may create at trial, but is confident counsel will be able to resolve any potential problems that may arise.