# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

COMMONWEALTH LAND )
TITLE INSURANCE COMPANY, )
a Florida Corporation, )
     Plaintiff, )
      )
v. )    C.A. No. N14C-04-199 PRW
      )
VANCE A. FUNK, IV and THE )
LAW OFFICES OF VANCE A. )
FUNK, a Delaware Professional )
Association, )
     Defendants. )

Submitted: May 12, 2015
Decided: June 17, 2015

## <u>MEMORANDUM OPINION</u>

*Upon Defendants' Renewed Motion to Compel and for Sanctions,*
**DENIED.**

Bradley P. Lehman, Esquire, Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., Wilmington, Delaware, Phillip A. Magen, Esquire, (*pro hac vice*), Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., Philadelphia, Pennsylvania Attorneys for Plaintiff.

Jeffrey M. Weiner, Esquire, Wilmington, Delaware, Attorney for Defendants.

**WALLACE, J.**

## I.    INTRODUCTION

Before the Court is the Renewed Motion to Compel and for Sanctions of Defendants, Vance A. Funk, IV and the Law Offices of Vance A. Funk (collectively, "Funk" or "Funk Defendants"), heard on April 27, 2015.  The Funk Defendants seek to compel Plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") to produce email communications between Commonwealth and counsel it retained for its insureds, Alessio and Nancy Baffone (collectively, the "Baffones").  Commonwealth asserts the emails are protected by attorney-client privilege and are therefore not discoverable.  For the reasons set forth more fully below, the Funk Defendants' Motion to Compel is **DENIED.**

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

This matter involves a claim for contractual indemnification arising out of a property sale in which the Funk Defendants served as the closing agent.  Part of the closing required the Funk Defendants to ensure the Baffones had a priority mortgage on the property.  When a dispute arose over which mortgage had priority—the Baffones' or the property sellers' (Angelo and Mary Galantino - the

---

[1]    A fuller recounting of the facts and wearying proceedings leading to this point are found in this and the Supreme Court's prior opinions.  *See Commonwealth Land Title Ins. Co. v. Funk,* 2015 WL 8623183 (Del. Super. Ct. Apr. 22, 2015) (opinion on third party defendants' motion to dismiss and request for sanctions); *Commonwealth Land Title Ins. Co. v. Funk,* 2014 WL 8623183 (Del. Super. Ct. Dec. 22, 2014) (opinion on defendants' motion to dismiss*); Baffone v. Brady*, 2011 WL 2165136, at *3 (Del. Super. Ct. Apr. 26, 2011) (court's opinion determining underlying mortgage priority dispute), *rev'd*, *Galantino v. Baffone*, 46 A.3d 1076 (Del. 2012).

"Galantinos")—litigation soon followed. The matter was heard here and ultimately appealed to the Delaware Supreme Court. That Court found that, as a matter of law, the Galantinos' mortgage—as a purchase money mortgage—had priority over the Baffones' mortgage.

Commonwealth retained James F. Harker, Esquire, of Cohen Seglias Pallas Greenhall & Furman PC ("Cohen Seglias") to represent the Baffones' interests in the Supreme Court appeal. During the appeal and on the remanded proceedings in this Court, Mr. Harker exchanged certain email communications with Nate Tincher, Esquire, at Commonwealth. Some of those communications attached email chains including communications with the Galantinos' counsel, David E. Matlusky, Esquire.

As part of this indemnification claim, Commonwealth seeks damages for both the purchase money for the competing mortgage and for the attorneys' fees incurred in the underlying litigation and appeal. The Funk Defendants propounded discovery requests on Commonwealth seeking:

(1)    Communications between Plaintiff Commonwealth and the Galantinos and their counsel pertaining to the Galantinos' Mortgage referenced in paragraphs 10, 12, 20 and 29 of the Complaint;

(2)     [Support for the] $39,827.00 in attorneys' fees and costs incurred by Plaintiff in connection with the Superior

Court Action and the Appeal alleged in paragraph 7(b) of the Complaint.[2]

In response, Commonwealth produced copies of Cohen Seglias invoices for services rendered to Commonwealth. Some of the invoice entries indicate email communications made between Mr. Harker and Mr. Tincher.

The Funk Defendants also served a Subpoena Duces Tecum on Cohen Seglias, requesting "[a]ll non-privileged documents in connection with representation of Baffone, Alessio & Nancy. . . commencing on or about 9/16/01 through 5/14/13."[3] Cohen Seglias produced its entire Baffone file save the email communications between Mr. Harker and Mr. Tincher. The Funk Defendants now seek to compel Commonwealth to produce those emails under Superior Court Civil Rule 37.[4] As requested by the parties at argument on this motion, the Court has reviewed those emails *in camera* for their discoverability.

## III.  STANDARD OF REVIEW

On a motion to compel discovery, the Court determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged

---

[2]     Defs.' Renewed Mot. Compel at 2.

[3]     Ex. E to Defs.' Renewed Mot. Compel.

[4]     Del. Super. Ct. Civ. R. 37 (party may apply for order compelling discovery for failing to produce documents for inspection under Rule 34).

-4-

evidence.[5]    A party asserting a privilege bears the burden of establishing that the requested documents or communications are in fact, and as a matter of law, protected by privilege.[6]

## IV.    DISCUSSION

Commonwealth claims that the emails the Funk Defendants seek are protected by attorney-client privilege under Delaware Rule of Evidence 502.[7]  The Funk Defendants argue that that privilege has been waived, and that they are entitled to see the contents of the emails as they relate to the claim for attorneys' fees and alternate avenues of equitable relief that were available in the underlying action.

As the asserter of the privilege, Commonwealth bears the burden of establishing that the emails are privileged.  To invoke the protection of attorney-client privilege, Commonwealth must show that the communications were made: "(1) for the purpose of seeking, obtaining or delivering legal advice, (2) between

---

[5]    Del. Super. Ct. Civ. R. 26(b)(1); *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. Ct. May 5, 2015).

[6]    *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992) ("The burden of proving that the privilege applies to a particular communication is on the party asserting the privilege."); *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *5 (Del. Super. Ct. Feb. 12, 2009).

[7]    D.R.E. 502(b)(3) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest. . .").

privileged persons, and (3) that confidentiality was intended."[8]  Commonwealth represents in its brief that Commonwealth retained Mr. Harker to "represent the common legal interests of the Baffones and Commonwealth in the underlying litigation."[9]  Although the Funk Defendants claim there is insufficient evidence of an attorney-client relationship between Cohen Seglias and Commonwealth, both parties agreed to the Court reviewing the communications at issue *in camera*. Having done so, it is clear that there was an attorney-client relationship between Cohen Seglias and Commonwealth, as Commonwealth represents.[10]  It is further clear that the communications were intended to be confidential, and that they were made for the purpose of seeking legal advice.

### A. The Baffones Did Not Waive Attorney-Client Privilege on Behalf of Commonwealth.

The Funk Defendants argue that the Baffones waived any privilege they held when Cohen Seglias produced the contents of the Baffones' file.  Indeed, intentional disclosure of privileged communications to third parties surrenders the

---

[8]    *Rembrandt*, 2009 WL 402332, at *5.

[9]    Pl.'s Resp. Br. at 3.

[10]    The definition of "client" under D.R.E. 502(a)(1) further supports the Court's conclusion that there is an attorney-client relationship here: "A 'client' is a person, public officer or corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer."

privilege as to those communications.[11]  Commonwealth argues that because Cohen Seglias represented its individual legal interests, albeit in common with the Baffones, the Baffones' waiver has no effect as to Cohen Seglias/Commonwealth communications not intentionally disclosed.

The Court agrees that Commonwealth, itself an independent privilege holder, "should not be forced unwillingly into a waiver of [that] privilege based on another client's decision to waive the privilege."[12]  Thus, because Cohen Seglias represented both Commonwealth's and the Baffones' common legal interest,[13] the Baffones' waiver is of no moment to Commonwealth's assertion of privilege against the Funk Defendants.  The emails between Mr. Harker and Mr. Tincher are

---

[11]  *See* D.RE. 510(a) (providing waiver occurs upon intentional disclosure of protected communications); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 (Del. 1992) ("It is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications.").

[12]  *Interfaith Hous. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1400 (D. Del. 1994) (finding that D.R.E. 502 does not permit one client to waive on behalf of all); *Tenneco Auto. Inc. v. El Paso Corp.*, 2001 WL 1456487, at *2 (Del. Ch. Nov. 7, 2001) (citing *Interfaith*, 841 F. Supp. at 1400-02) (holding one client could not waive attorney-client privilege on its own as to communication addressing a common interest shared by both clients); *Common Cause of Delaware v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 1995 WL 733401, at *5 (Del. Ch. Dec. 5, 1995) (summarizing *Interfaith*'s holding as "a waiver by one joint client does not waive the privilege of another joint client").

[13]  *See Titan Inv. Fund II, LP v. Freedom Mortgage Corp.*, 2011 WL 532011, at *4 (Del. Super. Ct. Feb. 2, 2011) ("As a general rule, application of the common interest privilege is appropriate where it is clear that the parties were collaborating and sharing information in furtherance of a joint *legal* strategy or objective, rather than simply seeking legal advice with regard to a commercial transaction.").

therefore not discoverable because they are protected attorney-client communications.

**B. The "At Issue" Exception to Attorney-Client Privilege Does Not Apply.**

Commonwealth also argues that the emails do not fall within the "at issue" exception to attorney-client privilege. The "at issue" exception, another form of attorney-client privilege waiver, applies when: "(1) the party [asserting privilege] injects the communications themselves into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications."[14] The principles of waiver and fairness underlie this exception—a litigant holding the privilege may not use it to both shield itself from discovery and "rely subsequently on the substance of those communications to prove its case."[15] And the Court considers the ability of the party seeking the communication to obtain the information sought from reliable alternate sources when determining whether the privilege should apply.[16]

---

[14] *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania*, 623 A.2d 1118, 1125 (Del. Super. Ct. 1992).

[15] *In re Quest Software Inc. Shareholders Litig.*, 2013 WL 3356034, at *2 (Del. Ch. July 3, 2013).

[16] *See Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 60 (Del. Ch. 2005) (noting the "at issue" exception turns "in substantial measure on whether the party seeking to discover the attorney-client communications placed at issue is disadvantaged because it is otherwise unable to obtain the information from an alternative source if the attorney-client privilege is respected").

The Court finds that Commonwealth did not place the contents of the communications "at issue" simply by alleging attorneys' fees as part of its damages.[17] Further, Commonwealth need not and does not rely on the contents (*i.e.*, the "substance") of those communications between Mr. Harker and Mr. Tincher to pursue its indemnification claim against the Funk Defendants. That cause of action against the Funk Defendants exists irregardless of any equitable form of relief considered for the Commonwealth's insureds in the underlying action.

Moreover, the Funk Defendants have already obtained the rest of the Baffones' file from Cohen Seglias, including the documents prepared in anticipation of a potential Chancery action. The Funk Defendants are thus not disadvantaged here; they not only were able to obtain information on the Chancery action from an alternative source, they have already obtained such information.[18] The Court finds that the emails' contents are not "at issue" in this litigation and are therefore protected by attorney-client privilege.

---

[17] *See In re Quest Software Inc.*, 2013 WL 3356034, at *3 (holding that in claims for attorneys' fees under the corporate benefit doctrine, the defendant asserting attorney-client privilege in communications with counsel providing litigation status updates did not place those communications "at issue"); *Cf. Princeton*, 883 A.2d at 60-61 (finding "at issue" exception did apply in malpractice fraud case where defendant disclaimed the accuracy of certain documents her attorney prepared in the underlying malpractice action, even where those documents were allegedly not relied upon in settlement negotiations).

[18] *See Princeton*, 883 A.2d at 60 (allowing party to obtain information about how a malpractice attorney prepared documents on behalf of her client because the party seeking the information could not obtain it from any other source).

## V.    CONCLUSION

The Court thus finds that Commonwealth has met its burden of  establishing the privileged nature of the communications at issue here.  The Funk Defendants' motion to compel the email communications *between* Cohen Seglias *and* Commonwealth is consequently **DENIED.**   The accompanying motion for sanctions is also **DENIED**.   Commonwealth shall, however, produce redacted versions of all other communications within the email chains submitted to the Court *in camera*, as these are not subject to attorney-client privilege and are otherwise discoverable.

**IT IS SO ORDERED.**


*/s/ Paul R. Wallace*
**PAUL R. WALLACE, JUDGE**


Original to Prothonotary
cc:  All counsel via File & Serve