The CHASE MANHATTAN BANK N.A., Plaintiff,

v.

DRYSDALE SECURITIES CORP., et al., Defendants.

No. 82 Civ. 6621 (RO).

United States District Court, S.D. New York.

July 2, 1984.

Milbank, Tweed, Hadley & McCloy, New York City, for plaintiff; Russell E. Brooks, Toni C. Lichtstein, James E. Clapp, Deborah A. Skakel, New York City, of counsel.

Debevoise & Plimpton, New York City, Wilson & McIlvaine, Chicago, Ill., for defendant; Robert B. von Mehren, Robert L. King, Mary Jo White, Michael E. Wiles, New York City, Charles W. Board, Chicago, Ill., of counsel.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Defendant Arthur Andersen & Co. ("Andersen") moved before Magistrate Buchwald to compel discovery of matters to which plaintiff Chase Manhattan Bank,

N.A. ("Chase") has interposed the objection of attorney-client privilege. The case is before me now on an appeal from the March 14, 1984 order of the Magistrate granting the discovery. For the reasons set forth below, I reverse the Magistrate's decision and deny the discovery there ordered.

The subject sought to be discovered is Chase's understanding from its counsel as to the capacity in which it was trading with Drysdale Government Securities, Inc. ("DGSI"), whose collapse led to Chase's loss of 287 million dollars, the subject of this suit. Andersen seeks access to communications from Chase's legal department possibly rendering an opinion as to whether Chase stood as a mere agent in the securities transactions, or was itself a principal or agent for undisclosed principals and therefore fully liable for any financial exposure. Andersen argues that this status is relevant to the issue of Chase's behavior, reasoning that the justifiability of its reliance on Andersen's allegedly fraudulent opinion of DGSI must be viewed in the context of Chase's perception of its exposure throughout the deal. Andersen has attempted to explore Chase's communications with its lawyers as to that risk, but as to this, has been met by Chase's assertion of the attorney-client privilege.

At the outset I note that in another corporate advice setting, the Supreme Court has recently referred to the attorney-client privilege as the "oldest of the confidential communications known to the common law" whose purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed. 584 (1981).

Here, however, Magistrate Buchwald viewed the privilege as breached pursuant to the doctrine of implied waiver, adopting the formulation set forth in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975):

All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

I do observe that the *Hearn* court additionally cautioned, as others have, that the burden is particularly high on one seeking to pierce the attorney-client privilege. Balancing the importance of the privilege against Andersen's showing of justification under *Hearn*, I conclude, however, that the privilege attaching to any communications here should not be breached.

■ Implied waiver of the privilege occurs only through an affirmative act on the part of the one who holds it. In this case, Andersen asserts that there is a waiver implied by Chase's filing of the securities fraud suit, which includes justifiable reliance as an element. This is said to put the prudence of Chase's behavior in issue, possibly to break the chain of causation flowing from the misrepresentations in Andersen's original opinion. While it may be useful to Andersen to know the substance of the advice Chase received concerning its liability on the transaction, I do not believe that the communications are essential to establish of what a reasonably prudent bank should have known and should have done under the circumstances. The need for disclosure is not nearly as compelling

here as in the cases cited as precedent for implied waiver.

 Nor do I find that other bases for avoidance of the privilege here are persuasive. It cannot be possible for Andersen to justify breaching Chase's privilege by reason of *its own pleading* of an affirmative defense. That would give an adversary who is a skillful pleader the ability to render the privilege a nullity. Neither does the possible ultimate allocation of the burden to Chase on the issue of recklessness justify present release of the communications to Andersen. If, eventually, Chase does have the burden of persuading the trier of fact that it was *not* reckless, it may then choose to come forward with the proof it controls. The implied waiver precedents mention burdens of proof, but they do so concerning issues raised by the party claiming the privilege. In each of those cases, the very subject of the communications was essential to that issue, either expressly so, or by implication. It is that showing, necessary to the finding of implied waiver, that I do not find here.

So ordered.