Dr. Joseph I. PIPPENGER, Jr., Plaintiff,

v.

William H. GRUPPE, Defendant.

No. IP 90–195 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 6, 1994.

Carson P. Veach, Harold C. Wheeler, Seyfarth Shaw Fairweather & Geraldson, Chicago, IL, Philip W. Whistler, Ice Miller Donadio & Ryan, Indianapolis, IN, for plaintiff.

Steven A. Riley, J. Mark Tipps, Kay T. Lang, Bass Berry & Sims, Nashville, TN, John F. Joyce, Bradley C. Morris, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, for defendant.

BARKER, Chief Judge.

Pursuant to Fed.R.Civ.P. Rule 72(a), defendant, William H. Gruppe ("Gruppe"), has filed an objection to an order entered by Magistrate Judge Kennard P. Foster on December 10, 1993 (the "order"). In the order Magistrate Judge Foster denied Gruppe's Combined Motion to Compel Answers to Questions Asked on Oral Examination and to Compel Production of Documents and for Sanctions ("Motion to Compel"). Magistrate Judge Foster also denied Gruppe's motion to compel Pippenger's former counsel, Harold C. Wheeler ("Wheeler") to answer certain questions propounded to him during a deposition taken on November 22, 1991 and May 20, 1992. Having reviewed the objections as well as the corresponding memoranda of law in support of and in opposition to the objections, and being otherwise duly advised, the Court concludes that the Magistrate Judge's ruling must be affirmed in part and deferred in part.

## I. Background

The plaintiff, Joseph I. Pippenger ("Pippenger"), declined to answer certain oral questions propounded to him during a deposition taken on July 16, 1991 and May 21, 1992, *see* Defendants' Memorandum in Support of Objections to Magistrate Judge's Order, Appendix B and Appendix E, or to produce certain documents Gruppe sought in discovery. Pippenger invoked the attorney-client privilege as grounds for refusing to answer the deposition questions. He claimed that the documents that he refused to produce were shielded by the attorney-client privilege as well as the work product doctrine. Consistent with the plaintiff's assertion of the attorney-client privilege, Pippenger's former counsel, Harold C. Wheeler, likewise refused to answer certain questions propounded to him during a deposition taken on November 22, 1991 and May 20, 1992. *See* Defendants' Memorandum in Support of Objections to Magistrate Judge's Order, Appendix H. Thereafter, at the direction of Magistrate Judge Foster, Wheeler answered questions submitted by Gruppe *in camera*. *See* Defendants' Memorandum in Support of Objections to Magistrate Judge's Order, Appendix C. After reviewing a transcript of the *in camera* proceeding, Magistrate Judge Foster orally advised the parties at a subsequent pre-trial conference that the communications sought by Gruppe during Wheeler's deposition were protected by the attorney-client privilege. Thereafter, Gruppe requested that Magistrate Judge Foster issue a written order: (1) setting forth his prior oral ruling that communications sought during Wheeler's deposition were protected by the attorney-client privilege; (2) ruling whether the communications sought during Pippenger's deposition were also protected by the attorney-client privilege; and (3) ruling whether the production of documents withheld by Pippenger were immune from discovery on the basis of the work product doctrine. On December 10, 1993, Magistrate Judge Foster issued his written order summarily denying discovery of the communications and documents on the basis of the attorney-client privilege and the attorney work product doctrine. Gruppe has filed the instant objection challenging these conclusions.

## II. Analysis

Gruppe argues that the Magistrate Judge's decision denying his motion to compel is clearly erroneous and contrary to law. Specifically, Gruppe alleges that (1) the attorney-client privilege does not protect the answers he attempted to elicit during the depositions of both Pippenger and Wheeler and (2) the work product doctrine is inapplicable to preclude the production of documents which Pippenger has withheld.

### A. Attorney–Client Privilege

 "The attorney-client privilege shields confidential communications between an attorney and his client made for the purpose of furnishing or obtaining legal advice and assistance." *Potts v. Allis–Chalmers Corp.*, 118 F.R.D. 597, 602 (N.D.Ind.1987). The party seeking to invoke the protection of the attorney-client privilege has the burden

of establishing all of its elements. *U.S. v. White*, 950 F.2d 426, 430 (7th Cir.1991) (*citing United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983)). The Seventh Circuit has adopted the elements of the attorney-client privilege as outlined by Dean Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* (*quoting* 8 Wigmore *Evidence* § 2292). The existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege, *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D.Ill. 1980). "The privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *In re Walsh*, 623 F.2d 489, 493 (7th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980) (*quoting Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). The scope of the privilege is narrow because it is in "derogation of the search for the truth." *U.S. v. White*, 950 F.2d at 430 (*citing In re Walsh*, 623 F.2d at 494).

### 1. Waiver of Privilege

■ Broadly speaking, Gruppe raises two arguments in support of overturning the Magistrate Judge's order regarding the several questions which Pippenger and Wheeler declined to answer during their respective depositions. The defendant first contends that Pippenger waived the privilege. A client may waive the protection of the attorney-client privilege either expressly or by implication. *Sedco International, S.A. v. Cory*, 683 F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982) (*citing United States v. Cote*, 456 F.2d 142, 144 (8th Cir.1972)). Gruppe does not contend that Pippenger expressly waived his right to assert the attorney-client privilege. Rather, he contends that by filing the instant securities lawsuit, an element of which is justifiable reliance on Gruppe's oral representations and omissions, Pippenger placed his state of mind in issue and thereby implicitly waived his right to assert the privilege.

In support of his claim of implied waiver, Gruppe cites *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975) which sets forth several factors a court should consider in determining whether a party has impliedly waived the privilege by virtue of his own affirmative conduct:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed the information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

*Id.* at 581. Contrary to Gruppe's contention, all three of the conditions enunciated in *Hearn* above have not been satisfied here. In a general sense, the first enumerated criteria has been met—Pippenger's assertion of the attorney-client privilege was the consequence of his commencement of the instant suit. However, the remaining two factors have not been satisfied. The communications between Pippenger and Wheeler have not been placed in issue, nor is the information necessary to the defense of the lawsuit. In this regard, the present case is distinguishable from *Hearn*.

In *Hearn*, the plaintiff, an inmate in a state penitentiary, brought a civil rights suit against state prison officials complaining about certain conditions of his confinement.

In response, the defendants asserted the affirmative defense of qualified immunity based on good faith. The plaintiff sought discovery of the communications between the defendants and the state attorney general in order to negate the defense. Over the defendants' assertion that the attorney-client privilege precluded the discovery of this information, the court determined that all of the elements necessary to a finding of waiver were present. *Id.* at 581.

Specifically, the court determined that "the legal advice [the defendants] received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defense...." *Id.* This was due to the nature of the qualified immunity defense, which imposed upon the plaintiff the burden of proving malice or unreasonable disregard of his clearly established constitutional rights in order to rebut the defense. The court reasoned that in the context of a civil rights case, the legal advice a defendant receive is highly probative on the questions of malice and knowledge of the plaintiff's constitutional rights. *Id.* at 582 n. 5. The court consequently determined that by pleading qualified immunity as an affirmative defense to the plaintiff's claim, the defendants placed the legal advice they received directly in issue. Similarly, courts have not hesitated to find an implicit waiver of the attorney-client privilege when a client asserts reliance on the advice of an attorney as an element of a claim or defense, *see, e.g., Conkling v. Turner,* 883 F.2d 431 (5th Cir.1989), or where the attorney and client are themselves adverse parties in a lawsuit arising out of the relationship, *see, e.g., Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975) (client charged attorney incompetence). In each of these instances waiver by implication arises because the privileged communication is critically relevant to the disputed issue to be litigated given the nature of the claim or defense, and the protected communication is the sole source of the evidence on the disputed issue.

However, these concerns are not implicated in the present case. Rather, this case presents a factual scenario more akin to those which confronted the courts in *Standard Chartered Bank v. Ayala Intern. Holdings,* 111 F.R.D. 76 (S.D.N.Y.1986) and *Chase Manhattan Bank, N.A. v. Drysdale Securities Corp.,* 587 F.Supp. 57 (S.D.N.Y. 1984). In *Ayala,* the plaintiff bank, SCB, brought suit against the defendant, Ayala, for breach of contract and fraudulent inducement in connection with the defendant's guarantee to repay certain loans the bank extended to a third corporation, Behring. Ayala filed several counterclaims against SCB premised upon alleged oral misrepresentations SCB made to Ayala regarding the loans it had extended to Behring. Specifically, Ayala alleged that it had previously acquired a majority interest in Behring upon certain representations SCB had made to Ayala regarding the manner in which it would handle the outstanding loan agreements with Behring. In response to Ayala's invocation of the attorney-client privilege, SCB alleged that it was entitled to discover all of the communications between Ayala and its attorneys regarding the Behring acquisition on the grounds that Ayala implicitly waived the privilege when it interposed its counterclaims alleging reliance upon SCB's representations in making the purchase. While the court recognized that the first *Hearn* factor had been established by the filing of the counterclaim, it rejected the plaintiff's attempt to override the protection of the attorney-client privilege because the second and third factors were absent:

> However, the second factor—that the asserting party has put the protected information in issue by making it relevant to the case—is not present here. Ayala's confidential communications to its attorneys and the legal advice rendered by its attorneys have not been placed in issue, as discussed below. For this reason the third *Hearn* factor is also lacking here—the privileged information is not vital to SCB's case.

> What is relevant to the counterclaims here is not what counsel said to Ayala or Ayala said to counsel, but what Ayala knew or should reasonably have been ex-

pected to know prior to acquiring the Behring stock. To be sure, as in every lawsuit, it would be useful and convenient for SCB to obtain Ayala's privileged material, and the substance of its confidential communications with its attorneys might reveal some of what Ayala knew. But those are not reasons to void the attorney-client privilege. Ayala's privileged communications are not the only available means by which SCB can learn what Ayala knew. Plainly and simply, Ayala, if asked in discovery, must reveal what it knew. Nor is any *legal* advice rendered by [counsel] to Ayala concerning acquisition of the Behring stock relevant to the issue of whether Ayala justifiably relied on the alleged oral representations of SCB.

*Ayala*, 111 F.R.D. at 81 (original emphasis).

Similarly, in *Chase Manhattan*, the plaintiff bank sued Arthur Andersen, Inc., over an allegedly fraudulent opinion it rendered regarding a company in which Chase traded securities. Andersen sought to discover the communications between Chase and its legal department regarding the potential liability associated with the trading. In seeking to overcome the protection of the attorney-client privilege Andersen argued that Chase had implicitly waived the privilege by virtue of filing a securities suit which included justifiable reliance as an element of the claim. As Gruppe has argued here, Andersen reasoned that it was entitled to examine the communications between Chase and its attorneys because the justifiability of Chase's reliance on the allegedly fraudulent opinion would be affected by Chase's perception of its liability following discussions on the subject with its attorneys. The court rejected this argument:

> In this case, Andersen asserts that there is a waiver implied by Chase's filing of the securities fraud suit, which includes justifiable reliance as an element. This is said to put the prudence of Chase's behavior in issue, possibly to break the chain of causation flowing from the misrepresentations in Angerson's [sic] original opinion. While it may be useful to Andersen to know the substance of the advice Chase received concerning its liability on the transaction, I

do not believe that the communications are essential to establish of what a reasonably prudent bank should have known and should have done under the circumstances.

*Chase Manhattan*, 587 F.Supp. at 58.

The Court finds the logic of *Ayala* and *Chase Manhattan* persuasive. This court similarly does not see how communications between Wheeler and Pippenger could be relevant to the issue of Pippenger's reliance on Gruppe's representations. Pippenger's claim is not based upon the advice of counsel nor are the communications probative of what Pippenger knew or should have known prior to selling his stock to Gruppe. In other words, the communications have no bearing on the reasonableness of Pippenger's reliance. Further, the privileged communications are not the sole source from which Gruppe can discover the extent of Pippenger's reliance; Gruppe can question Pippenger directly about his knowledge.

The court reached a similar conclusion in *Sedco International, S.A. v. Cory*, 683 F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982), a case upon which Gruppe heavily relies. In *Sedco*, the defendant filed a counterclaim against the plaintiff, an oil drilling company, alleging that the plaintiff had fraudulently induced him to invest in an oil venture. The plaintiff, making the same arguments advanced by Gruppe here, sought disclosure of privileged communications between the defendant and his attorneys. The plaintiff argued that the failure to disclose the content of the legal advice rendered to the defendant prevented it from proving that the defendant did not rely on plaintiff's misrepresentations or that such reliance was not reasonable. Although the court held that the defendant waived his right to assert the privilege to prevent disclosure of communications, it determined that such privileged communications would not be relevant to the issue of the plaintiff's reliance:

> [Plaintiff] does not suggest and we cannot perceive how receipt of ordinary legal advice could have made reliance unreasonable. Only evidence that [defendant] received new factual information or technically expert analysis of known facts might

have revealed that reliance was unreasonable. . . . It is difficult to perceive that counsel's own opinions on strictly commercial subjects, if any were expressed to [defendant], could have made [defendant's] reliance on [plaintiff] unreasonable.

*Id.* at 1206–07.

## 2. Privilege Inapplicable

Gruppe next contends that the communications are not privileged because they fall within one of several exceptions to the attorney-client privilege. Specifically, Gruppe argues that the communications are not protected by the attorney-client privilege because: (1) they were not made for the purpose of receiving legal advice; (2) they were intended to be transmitted to third parties; (3) they were facts; or (4) they were attorney initiated communications that do not reveal the substance of Pippenger's confidential communications. The Court shall address each of these arguments briefly.

■ Gruppe first argues that certain communications between Pippenger and his attorney constituted ordinary business advice and are therefore not protected by the attorney-client privilege. In particular Gruppe alleges that communications that may have transpired between Pippenger and Wheeler regarding the following matters are not privileged: (1) Wheeler's investigation into the quick-lube industry and the possible acquisition of McQuik's by another entity; (2) the prospects of making capital contributions to McQuik's and/or the partnerships; (3) negotiations with Gruppe on the price to charge for Pippenger's interest in McQuik's and the partnerships; (4) the capital requirements of the quick-lube industry; and (5) McQuik's expansion potential and its franchise operations.

■ The attorney-client privilege does not attach to ordinary business advice. *United States v. Loften*, 518 F.Supp. 839 (S.D.N.Y. 1981). Unlike the situation in *Loften*, however, Wheeler and Pippenger were not involved in a business relationship. Wheeler was hired by Pippenger in his capacity as a litigator and legal adviser to protect the value of his minority interest in McQuik's, and there is nothing to demonstrate that this relationship evolved into anything else. To the extent conversations occurred between Wheeler and Pippenger relating to the subjects described above, they were conducted "primarily for the purpose of securing legal opinions and legal services," *Id.* at 846, and are not subject to discovery.

■ Gruppe next points out that Pippenger and Wheeler hired the accounting firm of Seidman and Seidman to assist Pippenger in valuing his McQuik's shares. Gruppe contends that Pippenger's communications with Wheeler regarding the value of his McQuik's shares are not protected because they were intended to be revealed to a third party. The parties agree that the attorney-client privilege does not attach to information that the client expects to be communicated to third parties. *See, e.g., United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). They also agree that information disclosed to a third party remains privileged where said disclosure is for the purpose of assisting the attorney in rendering legal advice. *See, e.g., In re International Harvester's Disp. of Wis Steel Lit.*, 666 F.Supp. 1148, 1156 (N.D.Ill. 1987).

An examination of the questions asked at Pippenger's deposition reveals that Pippenger testified to the facts that his attorney related to him from Seidman & Seidman. For example, the following exchange occurred during his deposition:

Q. How did you determine [Seidman & Seidman] did not have adequate information [to evaluate McQuik's]?

A. Let's see, through my lawyer.

Q. And did you ask what information it is that they needed to do a more complete evaluation?

\* \* \* \* \* \*

Q. In terms of evaluating your interest you asked Stormy Wheeler what additional information do they need?

A. Yes.

Q. Did you ever find out what additional information that was that they needed?

Mr. Veach: I'm going to let you answer this question Dr. Pippenger, to the extent that Stormy Wheeler was transmitting to you, okay? I want you to think carefully about this, to the extent Stormy Wheeler told you what Seidman & Seidman told him, okay?

A. Uh huh (indicating affirmatively).

Mr. Veach: But I don't want you to the extent that Mr. Wheeler talked about legal strategies or the impact of the case of what Seidman & Seidman said, I don't want you to repeat that conversation. Do you understand the distinction I'm making? But to the extent that Stormy said, "I talked to Seidman & Seidman, and they said this," okay?

The Witness: Okay.

\* \* \* \* \* \*

A. As I recall, what they needed was further documentation of their—of the P & L's. They had to have cooperation of the company fully to ascertain the value of the—

*See* Defendants' Memorandum in Support of Objections, Appendix E, Pippenger Deposition, May 21, 1992 at 281–83. On the other hand, Pippenger properly refused to disclose substantive conversations he had with his attorney regarding the information disclosed to or by the accountants:

Q. Did you have any discussions with anyone regarding Seidman & Seidman's evaluation?

A. Did I talk to anyone about their evaluation? Yes. I talked with Mr. Wheeler.

Q. Tell me about those conversations with regard to the Seidman & Seidman evaluation.

Mr. Veach: I'm going to object on the grounds of attorney-client privilege and direct you not to answer, Dr. Pippenger.

*See* Defendants' Memorandum in Support of Objection, Appendix E, Pippenger Deposition, May 21, 1992 at 279. In other words, this question does not seek to discover the information related to or by Seidman & Seidman, but rather inappropriately seeks to have Pippenger disclose the substance of

confidential legal communications that he may have had with his attorney regarding that information. The Court concludes that Pippenger and Wheeler have disclosed all the information which was communicated to them to or by third parties that was not confidential in nature, including communications to and from Seidman & Seidman.

 Gruppe also argues that the attorney-client privilege does not protect the disclosure of facts which Pippenger and Wheeler conveyed to one another. It is beyond question that the attorney-client privilege does not preclude the discovery of factual information. Only the communications and advice given are privileged; the underlying facts communicated are discoverable if they are otherwise the proper subject of discovery. With reference to this principle, the Supreme Court observed in *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981):

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* at 395–96, 101 S.Ct. at 685–86 (original emphasis) (*quoting Philadelphia v. Westinghouse Electric Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962)). A party cannot conceal a fact merely by revealing it to his attorney. *Id.,* 449 U.S. at 396, 101 S.Ct. at 686.

Here Gruppe explains that he seeks to discover "the substance of communications between Pippenger and Wheeler regarding the quick-lube industry, particularly the entrance by major oil companies into the quick-lube business." *See* Defendants' Memorandum in Support of Objections at 22. Specifically, Gruppe points out that the following exchanged occurred during Pippenger's deposition:

Q. When did you first become aware of the merger between McQuik's and Quaker State?

A. Newspaper. In January of 89, I think it was, that there was an article in the paper about the merger.

\* \* \* \* \* \*

Q. And with whom was your first discussion of this concerning the merger?

A. Mr. Wheeler.

\* \* \* \* \* \*

Q. What facts did you advise him of?

A. Just that I had this notification of this transaction was going on.

Q. And did you tell him you wanted to do anything with regard to that?

Mr. Veach: Well, I'm going to have to impose an objection here, and if you don't mind, I would just simply ask, Dr. Pippenger, if the purpose of your phone call to Mr. Wheeler was to seek legal advice?

The Witness: It was to seek legal advice.

Mr. Veach: Then I'll have to direct Dr. Pippenger not to answer the question and object on the grounds of attorney-client privilege.

Q. Other than the existence of the merger, did you tell Mr. Wheeler any facts that were known to you with regard to this?

\* \* \* \* \* \*

Mr. Veach: You can ask him about what facts he knew about the merger at that point in time, but you can't ask him what he told the attorney.

\* \* \* \* \* \*

Q. What facts were known to you at that time with regard to the merger?

A. Just the facts that were in the paper.

See Defendants' Memorandum in Support of Objections, Appendix G, Pippenger Deposition at 3–6. Pippenger did not interpose the attorney-client privilege to preclude the discovery of underlying factual information which he may have happened to disclose during discussions with his attorney. To the contrary, the above exchange demonstrates that Pippenger testified openly and without objection with respect to facts that were within his knowledge. Gruppe's question was not directed at eliciting factual details

regarding Pippenger's knowledge of the proposed merger with Quaker State, but rather sought to discover the substance of confidential communications between Pippenger and his attorney regarding the merger. As such the disputed questions fall squarely within the prohibition against the disclosure of "communications concerning [a] fact", and Pippenger properly refused to answer them. *Upjohn Co.*, 449 U.S. at 395–96, 101 S.Ct. at 685–86.

Likewise, Wheeler openly testified about underlying facts that were within his knowledge as the following exchange demonstrates:

Q. Did you learn of any quick lube operations going public?

A. No.

Q. Did you have any discussions with Dr. Pippenger with regard to these subjects, the big oil companies becoming involved, mergers within the industry, or entities in the industry going public?

A. I don't recall any detailed discussions on any of those topics, no.

Q. Do you recall any discussions?

A. I believe those topics were discussed, but I would say they're within the attorney-client privilege.

\* \* \* \* \* \*

Q. Did you ever discuss that with Dr. Pippenger, the possibility that McQuik's might be purchased or might merge with another corporation in the future?

A. Yes, again in the context of attorney-client.

Q. And what did you tell him with regard to the possibility of merger of McQuik's?

Mr. Veach: Object. Direct you not to answer.

See Defendants' Memorandum in Support of Objections, Appendix H, Wheeler Deposition at 50–51, 57. As illustrated by the last question, Wheeler declined to answer only when questioned improperly about the substance of confidential communications he had with Pippenger relating to a specific fact. In short,

there is no indication that either Pippenger or Wheeler have refused to reveal underlying facts within their knowledge.

■ Finally, Gruppe contends that Wheeler's communications to Pippenger are not privileged to the extent that they do not reveal any of Pippenger's confidential communications. The Seventh Circuit has not addressed the scope of attorney initiated discussions subject, although district courts within this circuit have held that communications from an attorney to a client that do not disclose confidential information furnished by a client do not fall within the protection of the attorney-client privilege. *In re Air Crash Disaster At Sioux City, Iowa,* 133 F.R.D. 515, 518 (N.D.Ill.1990); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D.Ill.1980); *See also Western Trails, Inc. v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4 (D.D.C.1991); *Schenet v. Anderson,* 678 F.Supp. 1280 (E.D.Mich.1988). However, the Court is unaware of any communications that would fall within this exception. The only example of information which Gruppe contends falls within this exception is a question Wheeler declined to answer cited at page 25 of his brief. It asks Wheeler to reveal the substance of legal advice that he rendered to Pippenger regarding the valuation of his minority interest in McQuik's. This question clearly contemplates the disclosure of information protected by the attorney client privilege.

## B. Work Product Privilege

During the course of discovery, Pippenger declined to produce three sets of documents on the ground that they were immune under the work product doctrine. Specifically, Pippenger invoked work product immunity with respect to (1) Document No. 25—the financial summary of QSL Co. containing Wheeler's handwritten notes; (2) Document No. 27—other handwritten notes of Wheeler; and (3) Document No. 61—Pippenger's handwritten notes. Gruppe now contends that the work product doctrine does not shield the documents from discovery because (1) the documents were not prepared in anticipation of litigation and (2) he has a substantial need for the materials.

■ The work product doctrine has its genesis in the landmark decision of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and was later embraced in the 1970 amendments to the Fed.R.Civ.P. 26(b)(3) (entitled "Trial Preparation: Materials").

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impression, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. . . .

"The work product doctrine is 'distinct from and broader than the attorney-client privilege.'" *In re Air Crash Disaster at Sioux City, Iowa,* at 519 (*quoting United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975)). While the attorney-client privilege is intended to promote communications between attorney and client by protecting client confidences, the work product privilege is designed to protect the mental processes of the attorney by discouraging one side from taking advantage of trial preparation undertaken by opposing counsel. The privilege applies to documents prepared by either client or attorney "in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3). The protection for work product is not absolute, however, more accurately being described as a "limited immunity" rather than a privilege because disclosure may be ordered on a showing of substantial need for the materials. *Carver v.*

*Allstate Insurance Company,* 94 F.R.D. 131, 133 (S.D.Ga.1982); Pete Rinaldi's Fast Foods v. Great American Ins., 123 F.R.D. 198, 201 (M.D.N.C.1988). The party resisting disclosure first has the burden of establishing that documents qualify as work product. *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719 (5th Cir.1985); *EDO Corp. v. Newark Ins. Co.,* 145 F.R.D. 18 (D.Conn. 1992); *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.,* 142 F.R.D. 471 (D.Colo.1992); *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655 (S.D.Ind.1991); *Auto Owners Ins. Co. v. Totaltape, Inc.,* 135 F.R.D. 199 (M.D.Fla.1990); *U.S. v. Davis,* 131 F.R.D. 427 (S.D.N.Y.1990). Once the asserting party satisfies its burden of establishing that disputed material was prepared in anticipation of litigation, the burden shifts to the party requesting discovery to show (1) a substantial need of the materials to prepare his case and (2) the inability without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed. R.Civ.P. 26(b)(3); *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308 n. 2 (7th Cir.1985).

 Gruppe does not concede that the documents in question qualify as work product. The threshold question which the Court must address, then, is whether the documents sought to be protected were, in fact, produced in anticipation of litigation. The leading Seventh Circuit opinion on this issue is found in *Binks Manufacturing Company v. National Presto Industries, Inc.,* 709 F.2d 1109, 1120 (7th Cir.1983). In determining the standard to apply in addressing this issue the Seventh Circuit explained:

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the documents can fairly be said to have been prepared or obtained *because* of the prospect of litigation.

*Id.* at 1118–119 (*quoting* 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure,* § 2024 (1970) (Seventh Circuit's emphasis)). The Seventh Circuit further explained that " '[w]hile litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.' " *Binks,* 709 F.2d at 1119 (*quoting Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982)). " 'At the very least,' " then, the party invoking the protection of the doctrine has the burden of demonstrating that " 'some articulable claim, likely to lead to litigation, [has] arisen.' " *Binks,* 709 F.2d at 1119 (*quoting Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 865 (D.C.Cir.1980)). In summary, Pippenger has the burden of proving that the documents that he wishes to withhold were 'prepared ... *because* of the prospect of litigation,' or, that 'some articulable claim *likely* to lead to litigation' had arisen." *Binks,* 709 F.2d at 1120 (citations omitted) (original emphasis). *Compare Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 570 n. 10 (S.D.Ind.1990) ("[T]he document sought to be protected can be said to have been prepared or obtained *because of the prospect of litigation* when the *primary motivation was to aid in possible future litigation.*"). The fact that litigation ensued or that a party has consulted or retained an attorney, undertaken an investigation, or engaged in negotiations is insufficient to establish that a particular document was prepared in anticipation of litigation. *Harper,* 138 F.R.D. at 660 (citations omitted).

 In order to allow a court to make an informed determination as to whether the work product immunity in fact applies, the party invoking the privilege must come forward with specific facts which support a finding of privilege. *See Lundy v. Interfirst Corp.,* 105 F.R.D. 499, 504 (D.D.C.1985) (citing *Resident Advisory Board v. Rizzo,* 97 F.R.D. 749, 752–53 (E.D.Pa.1983)). *Accord, Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 145 F.R.D. 84, 88 (N.D.Ill.1992); *Snowden By and Through Victor v. Connaught Laboratories, Inc.,* 137 F.R.D. 325, 334 (D.Kan.1991). Pippenger has failed entirely to satisfy this elementary burden. In his response brief, Pippenger contends that "[t]he documents sought by Defendants were prepared by Mr. Wheeler or by Dr. Pippenger and relate to the preparation, strategy, and appraisals of the ·strengths and weak-

nesses of the lawsuit, and to the activities of Mr. Wheeler in preparing the case. Thus, they are clearly work product." Response Brief at 12. Beyond this bald assertion, Pippenger has not set forth any specific facts to support such a legal conclusion.

■ This type of blanket objection will not suffice to support a claim that the work product doctrine prohibits the production of documents. "A court may require a party asserting the work product doctrine to make a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Snowden By and Through Victor*, 137 F.R.D. at 334 (D.Kan.1991); *see also, Allendale Mut. Ins. Co.*, 145 F.R.D. at 88. Pippenger has not provided the Court with a detailed description of the materials in dispute or a specific explanation of why each document is privileged or immune from discovery. This last explanation must include a comprehensive presentation of all factual grounds and legal analyses in a non-conclusory fashion. *See Id.* Of course, a specific and detailed showing by the party resisting disclosure can be made "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories." *Toledo Edison v. G.A. Technologies, Inc.*, 847 F.2d 335, 339 (6th Cir.1988). However, unsworn representations of an attorney are not evidence and do not become a part of the record. *Henderson v. Zurn Industries, Inc.*, 131 F.R.D. at 570 n. 10 (*citing Morrison v. Duckworth*, 898 F.2d 1298, 1299 (7th Cir.1990)).

■ In short, Pippenger has failed to provide absolutely any evidence from which this Court could determine whether each particular document meets the requirements of the work product exclusion. Submitting a voluminous batch of papers for *in camera* review does not satisfy a proponent's burden of establishing that some or all of the documents deserve work product protection. *Pete Rinaldi*, 123 F.R.D. at 203. Moreover, given the large numbers of papers which make up each document and their nature the character of the documents is not readily apparent.[1] To make a determination as to whether any of the material contained within the disputed documents was prepared in anticipation of litigation would require the Court to either accept Pippenger's assertion, without inquiry, investigation or verification, or to blindly speculate. These alternatives are patently unacceptable. In order to permit the Court to make an intelligible determination as to the material within each set of documents, Pippenger must provide greater factual detail, including the author of the documents (for example, several series of notes contained in Document No. 27 appear to be authored by different persons) and their capacities, the recipients (if any) and their capacities, a summary of the subject matter of the document, the purpose for its production, and a specific explanation as to why a claim of immunity from production has been raised. Any attempt to make a determination without the factual foundation outlined above would amount to a waste of judicial time and resources. To the extent the plaintiff wishes to assert the attorney-client privilege as to certain material contained within the documents he has refused to produce, he must make a similar detailed and specific showing in order for the Court to determine whether disclosure is precluded. *Holifield v. U.S.*, 909 F.2d 201, 204 (7th Cir.1990).[2]

## III. Conclusion

Accordingly, by reason of the foregoing, the Court hereby AFFIRMS IN PART the Magistrate Judge's Order of December 13, 1993 insofar as it ruled that communications

1. Document Nos. 27 and 61 are not short documents but rather are a collection of a series of handwritten notes, over 600 pages in length, some bound together and others existing in loose leaf fashion, many of which are difficult to decipher because of poor handwriting or copy quality. The Court cannot locate an *in camera* submission of Document No. 25, but Gruppe maintains that it was created in September of 1986,

more than three months prior to litigation that ensued between the parties in state court.

2. The Court shall not address the issue of "substantial need" and "undue hardship" unless and until the plaintiff makes the preliminary showing that the documents in question qualify as work product.

sought during Pippenger's and Wheeler's depositions were protected by the attorney-client privilege. The Court DEFERS IN PART a ruling on the Magistrate Judge's Order of December 13, 1993, insofar as it determined that Document Nos. 25, 27 and 61 were protected by the work product and/or attorney-client privilege(s) until such time as Pippenger presents to the Court in a reviewable form a detailed explanation of the justification for withholding each of the disputed documents together with any specific facts which would support such a conclusion. Pippenger shall make such a showing within 15 days of the date of this order.

**IT IS SO ORDERED.**