### In re CFS–RELATED SECURITIES FRAUD LITIGATION.

Nos. 99–CV–825–K(J), 00–CV–111–K(J), 99–CV–839–K(J), 99–CV–828–K(J), 99–CV–862–K(J) to 99–CV–864–K(J), 99–CV–873–K(J), 99–CV–829–K(J), 99–CV–874–K(J), 00–CV–110K(J), 99–CV–889–K(J), 00–CV–205–K(J), 02–CV–591K(J), 99–CV–919–K(J), 00–CV–847–K(J), 02–CV–961K(J), 00–CV–104K(J), 02–CV–531K(J).

United States District Court,
N.D. Oklahoma.

April 23, 2004.

Lowell E. Sachnoff, Jeffrey T. Gilbert, James A. Rolfes, Sachnoff & Weaver Ltd., Chicago, IL, David L. Bryant, Bryant Law Firm, Tulsa, OK, for AUSA Life Insurance Company, Inc., AAA, and Liberty, plaintiff.

David Spears, Linda Imes, Richards, Spears, Kibbe & Orbe, New York, NY, Lucinda O. McConathy, Richards, Spears, Kibbe & Orbe, Washington, D.C., Max K. Naegler, Law Offices of Max Naegler, Glenpool, OK, for Plaintiffs for Abbey, AIG, Cerberus and Bank Austria AG.

K. Clark Phipps, John J. Carwile, Carol J. Allen, Atkinson, Haskins, Nellis, Boudreax, Holeman, Phipps, Brittingham & Gladd, Tulsa, OK, for Plaintiffs in Bank Hapoalim, Bristol Fund & Pioneer lawsuits.

Kenneth I. Schacter, Bonnie Host, Bingham McCutchen L.L.P., New York, NY, Carol Wood–English, Boesche McDermott LLP, Tulsa, OK, for Plaintiffs in MPF lawsuit.

Pamela Helena Goldberg, James M. Reed, Richard Mark Petrich, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, Daniel G. Webber, Jr., Ryan & Whaley, Oklahoma City, OK, Charles Robert Burton, IV, R. Thomas Seymour, Seymour Law Firm, Fred Randolph Lynn, Conner & Winters, Montgomery L. Lair, Brewster & De Angelis PLLC, Tulsa, OK, Eric S. Eissenstat, Terry Warren Tippens, Warren F. Bickford, IV, John Barnes Heatly, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, Paul DeMuro, Fred Dorwart Lawyers, Tulsa, OK, Thomas C. Rice, Elizabeth A. Fuerstman, Simpson, Thacher & Bartlett, Michael A. O'Connor, Chase Manhattan Bank Legal Dept., New York, NY, for William R. Bartmann, Kathryn A. Bartmann, Gertrude A. Brady, Jay L. Jones, Michael C. Temple, Chase Securities, Inc., defendants.

Mark Stanley Rains, J. Douglas Mann, William Andrew Caldwell, John Edward Howland, Andrea R. Kunkel, Eric D. Wade, Rosenstein, Fist & Ringold, Richard Parker Hix, Richard H. Foster, Doerner, Saunders, Daniel & Anderson, Tulsa, OK, Vance L. Beagles, Ralph I. Miller, Penny P. Reid, Weil, Gotshal & Manges LLP, Dallas, TX,

Michael J. Moscato, Jr., Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY, for Arthur Andersen, L.L.P., an Illinois partnership, consolidated defendant.

Jack L. (Drew) Neville, Jr., Bernard J. Rothbaum, Russell Cook, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Defendant Caroline B. Benediktson.

Geroge S. Corbyn, Jr., Corbyn & Hampton, Oklahoma City, OK, for Defendant Bruce Hadden.

Reuben Davis, Mary L. Lohrke, Boone, Smith, Davis, Hurst & Dickman, P.C., Tulsa, OK, for Defendant Mayer, Brown, Rowe & Maw, LLP.

## ORDER

JOYNER, United States Magistrate Judge.

Currently before the Court for consideration is the motion by Mayer Brown Rowe & Maw LLP ("Mayer Brown") to compel the production of documents from Plaintiffs' investment counsel which some Plaintiffs claim are protected by the attorney client privilege. [Case No. 99–CV–828–K(J), Docket No. 639–1]. Some Plaintiffs' groups agree with Defendants that the privilege is waived, and have agreed to produce the documents. Some Plaintiffs groups have asserted that the privilege has not been waived.

The Court has reviewed the briefs filed by the parties, considered the applicable case law and the arguments of counsel. The Court **GRANTS IN PART AND DENIES IN PART** Mayer Brown's motion to compel the documents as more fully detailed in this Order. [Case No. 99–CV–828–K(J), Docket No. 639–1].

Mayer Brown asserts that to the extent that the Plaintiffs assert reliance upon their attorneys' receipt of the Mayer Brown authored Negative Assurance Letters to establish the reliance element of Plaintiffs' claims, the Plaintiffs have waived the attorney client privilege. Mayer Brown asserts waiver with

respect to two categories of documents. First, Mayer Brown contends that Plaintiffs have waived the attorney client privilege with respect to any alleged reliance by Day Berry & Howard LLP ("DBH")[1] or in-house counsel on any documents or information in connection with the CFS-related securitizations. Second, Mayer Brown asserts that Plaintiffs have waived the attorney client privilege with respect to the nature and reasonableness of DBH's or in-house counsel's alleged reliance on Mayer Brown.

The Plaintiffs have different positions with respect to Mayer Brown's arguments. Some Plaintiffs have affirmatively waived the privilege; some Plaintiffs request that the Court enter an Order specifying the extent of the waiver; and some Plaintiffs contend no waiver has occurred.

## I. WAIVER AND EXTENT OF WAIVER ASSERTED BY SOME PLAINTIFFS' GROUPS

### A. Plaintiff Bank Hapoalim and Plaintiff Pioneer Insurance Company

The Bank Hapoalim and the Pioneer Insurance Company Plaintiffs,[2] contend that they have neither resisted nor precluded inquiry by Mayer Brown regarding DBH. The Bank Hapoalim and Pioneer Insurance Company Plaintiffs additionally note that they have produced any documents in their possession regarding DBH. The Court finds that Bank Hapoalim and Pioneer Insurance Company have voluntarily produced the documents requested and waived their attorney client privilege. Plaintiffs Bank Hapoalim and Pioneer Insurance Company are not required to produce any additional documents to Mayer Brown.

### B. The "RSKO" Plaintiffs

The Plaintiffs represented by Richard Spears Kibbe & Orbe, the "RSKO Plain-

---

1. DBH served as the investors' counsel for some Plaintiffs with regard to their investments in the CFS-sponsored securitizations.

2. These Plaintiffs groups have claims in Case No. 99–CV–828–K(J), and Case No. 99–CV–919–K(J). These Plaintiffs groups are represented by the same law firm—Atkinson, Haskins, Nellis, Holeman, Brittingham, Gladd, & Carwils.

tiffs" [3] request that the Court enter an Order detailing the extent of the waiver by the RSKO Plaintiffs. The RSKO Plaintiffs note that three "categories" of documents are affected by their proposed waiver.

    (1) communications from any RSKO Plaintiff to DBH;

    (2) communications from DBH to any RSKO Plaintiff that did not go jointly to one or more of the other investors;

    (3) communications from DBH to any RSKO Plaintiff that did go jointly to one or more of the investors.

The RSKO Plaintiffs agree that they have waived the attorney client privilege with respect to what the RSKO Plaintiffs identify as the first and second categories of documents—that is, communications from RSKO to DBH and communications from DBH to RSKO. The RSKO Plaintiffs express concern with regard to what they identify as the third category of documents—those documents to which a claim of joint privilege with other Plaintiffs apply.

The RSKO Plaintiffs focus on those communications which were made jointly to RSKO Plaintiffs and also to one or more other investors. At oral argument, counsel for the RSKO Plaintiffs noted that these documents consisted of approximately 20 documents. The RSKO Plaintiffs are willing to waive the attorney client privilege, but the RSKO Plaintiffs request a Court Order that defines the scope of the waiver and prohibits the use of the documents for which the RSKO Plaintiffs are waiving their privilege against other Plaintiffs that have not agreed to waive the privilege. The RSKO Plaintiffs express additional concern because some of the documents were addressed to entities which are not parties to the above-captioned lawsuits. The RSKO Plaintiffs do not wish to waive any privileges of other parties.

The RSKO Plaintiffs refer the Court to several cases which have held that, as between joint clients, one parties' waiver of the attorney client privilege does not effectuate the waiver of another parties' attorney client privilege. The Court in *Interfaith Housing*

*Delaware, Inc. v. Town of Georgetown*, 841 F.Supp. 1393, 1402 (D.Del.1994), noted that several commentators have concluded that the waiver by one joint client does not result in the waiver of another joint client.

In discussing the law of privilege, one text observed: "[T]he joint defense doctrine provides only that the privilege is not automatically waived in the case of joint consultations or exchanges of information; each client still retains the right voluntarily to waive the privilege with regard to his confidential communications with his own attorney. Furthermore, despite any commonality of interest that may exist between clients in such situations, a waiver by one does not effect a waiver as to the others' confidences." Scott N. Stone & Ronald S. Liebman, *Testimonial Privileges*, § 1.55 Joint Defense, at 95 (1983). *Accord* 2 David W. Louisell & Christopher B. Mueller, *Federal Evidence*, § 210, at 787–88 (1985) ("each client (and of course all together) may invoke the privilege as against third parties").

*Interfaith Housing Delaware, Inc.*, 841 F.Supp. at 1402. *See also Western Fuels Ass'n Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201, 203 (D.Wyo.1984) ("[W]aiver of privileges relating to information shared in joint defense communications by one party to such communications will not constitute a waiver by any other party to such communications.").

◼ The Court concludes that the RSKO Plaintiffs may waive their attorney client privilege without repercussions to the attorney client privilege of other joint clients. The Court additionally concludes that, based on the facts of this case, the RSKO Plaintiffs have waived their privilege, to the extent discussed below, and orders the documents produced. The Court concludes with respect to the joint client waiver issue, that the waiver of the attorney client privilege by the RSKO Plaintiffs and the production of documents by the RSKO Plaintiffs does not operate as a blanket waiver with regard to privileges of other joint clients.

**3.** These Plaintiffs groups have claims in Case No. 99–CV–862–K(J), Case No. 99–CV–863–K(J), 99– CV–864–K(J), 99–CV–873–K(J), 02–CV–531–K(J), and 02–CV–591–K(J).

## II. RELIANCE BY PLAINTIFFS ON INVESTMENT COUNSEL RESULTS IN LIMITED WAIVER OF ATTORNEY CLIENT PRIVILEGE

The two remaining Plaintiffs groups, the "MPF Plaintiffs" and the "AUSA Plaintiffs" each assert that the attorney client privilege has not been waived by their respective Plaintiffs.[4]

The MPF Plaintiffs note that DBH served as their counsel solely with respect to the purchase of CFS securities in GREAT–A master trust offering in June 1998. The MPF Plaintiffs represent that the MPF Plaintiffs and their investment advisors had no conversations with DBH with regard to the investment in the CFS securities. The MPF Plaintiffs state that they relied on the issuance by Mayer Brown of the Negative Assurance Letters and the fact that the Negative Assurance Letters contained the proper 10b–5 language. The MPF Plaintiffs assert that they did not have access to the Negative Assurance Letters until after the CFS securitizations closed, and therefore the MPF Plaintiffs relied on counsel to assure them that the Negative Assurance Letters had been issued. The MPF Plaintiffs contend that this limited reliance does not result in a broad waiver of the attorney client privilege.

The AUSA Plaintiffs note that the issuance by Mayer Brown of the Negative Assurance Letters was a condition precedent to the closing of each securitization. The AUSA Plaintiffs acknowledge that the individual Plaintiffs did not review the Mayer Brown letters, but relied on DBH's review of the letters.

■ Generally communications between a lawyer and the lawyer's client for the purpose of obtaining legal advice is a privileged communication which is protected by the legal process. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); Fed. R. Civ. Proc. 26(b)(1) (limiting discovery to any matter "not privileged"). Business advice, unrelated to legal advice, is not protected by the privilege even though conveyed by an attorney to the client. *See Asset Value Fund Limited Partnership v. The Care Group, Inc.,* 1997 WL 706320 at *1 (S.D.N.Y.1997); *In re Feldberg,* 862 F.2d 622, 626, 627 (7th Cir.1988) ("A business that gets marketing advice from a lawyer does not acquire a privilege in the bargain; so too a business that obtains the services of a records custodian from a member of the bar."); *Hardy v. New York News, Inc.,* 114 F.R.D. 633, 643–44 (S.D.N.Y.1987) ("When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved.").

■ It is well settled that factual information communicated from the attorney to the client is not privileged simply because an attorney was the source of the factual information.

Factual information cannot be given "privileged" status merely because an attorney communicated the facts to the client or because the client communicated the facts to the attorney. For example, providing preexisting documents to an attorney does not thereby render the documents protected by the attorney client privilege. *See Gould, Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676 (2nd Cir.1987). The mere act of copying an attorney in a communication between nonattorneys does not protect the communications between the nonattorneys. *See, e.g., United States Postal Serv. v. Phelps Dodge Ref. Corp.,* 852 F.Supp. 156, 160 (E.D.N.Y.1994). However, communications between the attorney and the client, even when the parties are discussing factual information, are protected by the attorney client privilege. The factual information discussed by the attorney and the client is discoverable, but the Court will generally not permit a party to inquire into the nature of the communications made between the attorney and the client, and the Court generally does not permit the deposition of the attorney. In-

---

4. The "MPF Plaintiffs" are represented by Bingham McCutchson LLP, and are the Plaintiffs in Case No. 99–CV–829–K(J). The "AUSA Plaintiffs" are represented by Sachnoff & Weaver, Ltd., and have claims in Case No. 99–CV–825–K(J), Case No. 99–CV–874–K(J), Case No. 99–CV–889–K(J), Case No. 00–CV–847–K(J), and Case No. 02–CV–961–K(J).

stead, the party conducting discovery is permitted to depose witnesses (including the client), and review documents which are available to both the parties and the attorneys but which do not constitute the communications between the client and the attorney.

*Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D.Okla.2002).

■ The attorney client privilege can be waived by the actions of the Plaintiff.

Three factors are frequently discussed by the courts in evaluating whether or not a party has waived an otherwise applicable privilege through some affirmative act. First, whether the assertion of the privilege is the result of some affirmative act, such as filing suit or asserting an affirmative defense, by the asserting party. Second, whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case. Third, if the privilege was applied, whether it would deny the opposing party access to information that was vital to the opposing parties defense.

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 199 F.R.D. 677 *citing Hearn v. B.J. Rhay*, 68 F.R.D. 574, 580 (E.D.Wash. 1975).

■ Defendant Mayer Brown contends that Plaintiffs have waived the attorney client privilege by placing their reliance on DBH to examine the Mayer Brown letter at issue. The Court has analyzed Defendants' waiver argument by applying the three *Hearn* factors to the case at bar. The Court finds that the Plaintiffs have waived the attorney client privilege by asserting reliance on the receipt by DBH of the Mayer Brown opinion letter. Defendant is permitted to inquire of Plaintiffs and DBH about the extent to which Plaintiffs did or did not rely on DBH and DBH's review of the Mayer Brown opinion letter. The Defendant may inquire during depositions and Plaintiffs must produce documents related to facts and business advice. Therefore, Mayer Brown can ask DBH if DBH told Plaintiffs about the Vernick departure, asset sales, Dimat, or other similar facts. Defendant cannot inquire further into the specific communications be-

tween DBH and Plaintiffs because the Court concludes that the waiver is limited to Plaintiff's reliance on DBH's receipt of the Mayer Brown opinion letter. Defendant may question Plaintiffs about any facts DBH told them that relate to the reasonableness of Plaintiffs' reliance on the Mayer Brown opinion letter, but Defendant may not ask about any legal advice regarding those facts. Defendant may not ask DBH about the reasonableness of Plaintiffs' reliance on DBH, the reasonableness of Plaintiff's reliance on Mayer Brown's opinion letter, or the reasonableness of DBH's reliance on the Mayer Brown letter because Plaintiffs have not waived the attorney client privilege with respect to those issues.

The cases containing facts most similar to the case at bar and which the Court finds most persuasive concluded that no waiver occurred, but permitted inquiry similar to that outlined above. In *Standard Chartered Bank PLC v. Ayala International Holdings Inc.*, 111 F.R.D. 76 (S.D.N.Y.1986), plaintiff contended that it was entitled to certain documents to establish that the defendant did not "justifiably rely upon any oral representations of [plaintiff] in deciding to purchase ... but rather relied upon its own business judgment and the guidance of its attorneys." *Ayala* at 79. In determining what information was required to be disclosed, the court concluded that facts and business advice must be disclosed.

Thus, in the instant case, Ayala must disclose to SCB all facts of which Ayala was aware at the time of the Behring acquisition, whether or not those facts were communicated by Ayala to Pettit & Martin and whether or not those facts were learned by Ayala from Pettit & Martin. Ayala must also disclose any business advice it may have received through Pettit & Martin that would not reveal the substance of confidential communications acquired by Pettit & Martin as attorneys for the purpose of rendering legal advice. In sum, SCB is entitled to learn from Ayala each and every fact on which it relied in deciding to purchase Behring's stock. But SCB maintains that this is not enough. SCB contends it is entitled to disclosure of the

actual privileged, confidential *communications* Ayala made to its attorneys and its attorneys made to it.

*Ayala,* 111 F.R.D. at 80 *emphasis in original.* The *Ayala* Court concluded that the information sought was neither placed in issue nor vital when measured against the *Hearn* factors.

> What is relevant to the counterclaims here is not what counsel said to Ayala or Ayala said to counsel, but what Ayala knew or should reasonably have been expected to know prior to acquiring the Behring stock.... Plainly and simply, Ayala, if asked in discovery, must reveal what it knew. Nor is any *legal* advice rendered by Pettit & Martin to Ayala concerning acquisition of the Behring stock relevant to the issue of whether Ayala justifiably relied on the alleged oral representations of SCB.

*Ayala* 111 F.R.D. at 81. In *Pippenger v. Gruppe,* 883 F.Supp. 1201 (S.D.Ind.1994), the defendants moved to compel certain documents and answers to deposition questions asserting that by the act of filing the securities lawsuit, "an element of which is justifiable reliance ... [the plaintiff] placed his state of mind in issue and thereby implicitly waive his right to assert the privilege." *Pippenger* at 1204

> The Court finds the logic of *Ayala* and *Chase Manhattan [Bank v. Drysdale Sec. Corp.,* 587 F.Supp. 57 (S.D.N.Y.1984)] persuasive. This court similarly does not see how communications between Wheeler and Pippenger could be relevant to the issue of Pippenger's reliance on Gruppe's representations. Pippenger's claim is not based upon the advice of counsel nor are the communications probative of what Pippenger knew or should have know prior to selling his stock to Gruppe. In other words, the communications have no bearing on the reasonableness of Pippenger's reliance. Further, the privileged communications are not the sole source from which Gruppe can discover the extent of Pippenger's reliance; Gruppe can question Pippenger directly about his knowledge.

*Pippenger* at 1206. *Asset Value Fund Limited Partnership v. The Care Group,* 1997 WL 706320 (S.D.N.Y.1997).

The Court notes that this issue presents a close question as to whether the inquiry which this Court is permitting (as detailed above) is covered by a privilege which has been waived or is simply a factual inquiry to which no privilege attaches. This Court finds that to the extent the above-limited inquiry falls within the privilege, then such privilege is waived. In the cases discussed above (*Ayala, Pippenger,* and *Asset Value*) it is not clear whether direct inquiry of counsel was permitted. In this case the Court concludes that inquiry of counsel and production of documents from counsel is permitted for the above-limited purposes. The Court additionally concludes that to the extent the information which the Court is requiring Plaintiffs to produce is factual information and business advice (as opposed to legal advice), no privilege protects such information, and production is required.

The Court has reviewed the cases submitted by Mayer Brown as supportive of its argument for a general and complete waiver with respect to all communications relating to the reliance on DBH, including the reasonableness of that reliance. The Court finds that each of those cases is distinguishable on their facts. *See Frontier Refining Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695 (10th Cir.1998) (information not vital because information was available from other sources); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476 (3rd Cir.1995) (finding waiver as to all communications when party raised defense of reliance on *advice* of counsel because party opposing defense must be allowed to test the information conveyed); *Walsh v. Seaboard Surety Co.,* 184 F.R.D. 494 (D.Conn.1999) ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication."); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 2003 WL 21277139 (S.D.N.Y.2003) (client sued its attorney and asserted reliance on the legal advice given by attorney); *Horizon Federal Savings Bank v. Selden Fox & Assoc.,* 1988 WL 77068 (N.D.Ill.1988) (plaintiff's lawsuit placed the

information upon which the plaintiff relied upon from plaintiff's attorney directly at issue); *Pereira v. United Jersey Bank*, 1997 WL 773716, *3, *6 (S.D.N.Y.1997) ("[E]xplicit reliance upon advice of counsel is not necessary to trigger waiver", implied waiver under *Hearn* will lie where a party asserts a position "'the truth of which can only be assessed by examination of the privileged communication.'"....   In sum, this is a case in which the factual assertions surrounding the setoff defense can only be fully assessed by examining UJB's otherwise privileged communications with counsel.") *citations omitted.* The Court is not persuaded that, under the facts presented by this case, a full and complete waiver requiring the production of all documents has occurred.

The Court concludes that Plaintiffs must produce all documents and that witnesses must answer questions with regard to Plaintiffs' asserted reliance on DBH's receipt of the Mayer Brown opinion letter. The Court draws a distinction between documents and questions related to the reliance by Plaintiffs on the act of DBH receiving the Mayer Brown opinion letter, and any other documents or communications related to other attorney client matters.   Whether this inquiry or production is characterized as unprivileged factual inquiry or privileged communication which has been waived will depend on the specifics of the request.   Regardless, the Court finds that the inquiry is allowed.

IT IS SO ORDERED.