Amber M. MEADE, Plaintiff,

v.

GENERAL MOTORS, LLC, Defendant.

CIVIL ACTION NO. 1:16–cv–00991–AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed April 21, 2017

K. Prabhaker Reddy, The Reddy Law Firm, PC, for Plaintiff.

David B. Ritter, Douglas M. Oldham, John F. Meyers, Barnes & Thornburg LLP, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

This matter is before the Court on the Parties' Joint Discovery Statement [Doc. 44] regarding Plaintiff's objections to Defendant's redaction of information from more than 300 documents based on an assertion of attorney-client privilege.[1]

## I. BACKGROUND

The parties agreed to submit the documents to the Court for in camera review. After Defendant indicated it needed additional time to review the documents prior to submission to the Court, the undersigned judge's law clerk, on behalf of the Court, emailed counsel and directed Defendant to produce the documents and a copy of the privilege log for in camera review by the close of business on March 7, 2017. The Court further directed that Defendant should highlight the portions of the documents that were redacted and provide a notation for the basis of the redaction if not otherwise indicated in the accompanying privilege log.

The production received by the Court on March 7 did not comply with the Court's instructions. First, there was no privilege log included with the batch of documents. Second, Defendant produced 363 pages with no highlighted text or other indication of what information was redacted or the basis for the redaction. After the law clerk working with the Court on this case corresponded with counsel for Defendant regarding the deficient production, counsel informed the Court that he could not comply with the Court's request sufficiently in advance of a scheduled telephone conference with the Court. In his email to the Court's clerk, counsel for Defendant stated: "I do not have the ability given this time schedule to go over each [sic] the redactions in each document. GM has their own internal process to redact documents that I am not involved in. It would take more time to consult with GM to address that issue. To address that issue, I have reviewed all of the redacted documents in their unredacted form. I have removed the privilege designation from many of them and will highlight the sections of the remaining documents where there is still a claim of privilege." (emphasis added).

As a result, the Court rescheduled the telephonic discovery conference and again ordered Defendant to produce a privilege log and re-format the documents for in camera production by highlighting the portions of the documents that were redacted and provide a notation for the basis of the redaction if not otherwise indicated in the accompanying privilege log. (March 8, 2017 Order, Doc. 45.)

In response to the Court's order, on March 9 Defendant produced a highlighted set of documents and a "privilege log." The "privilege log" consisted of a two-column table with column one identifying the bates number of the document and column two identifying the privilege as "attorney-client privilege" as shown below:

### Privilege Log

---

1. Defendant has not asserted any claim that the documents are protected work product.

| Bates No. | Privilege |
|---|---|
| GM_Meade000000157 | Attorney-Client Privilege |
| GM_Meade000000158 | Attorney-Client Privilege |
| GM_Meade000000159 | Attorney-Client Privilege |
| GM_Meade000000160 | Attorney-Client Privilege |
| GM_Meade000000161 | Attorney-Client Privilege |
| GM_Meade000000221 | Attorney-Client Privilege |
| GM_Meade000000650 - GM_Meade000000651 | Attorney-Client Privilege |
| GM_Meade000000656 | Attorney-Client Privilege |
| GM_Meade000000657 | Attorney-Client Privilege |

At the March 22, 2017 telephonic discovery conference, the Court advised Defendant that the privilege log failed to comply with either the Court's March 8th Order or the requirements of Rule 26(b)(5)(A) because it failed to identify the basis of the privilege assertion and failed to provide basic information sufficient to allow Plaintiff to understand the nature of the documents and the assertion of the privilege. The Court ordered Defendant to produce a proper privilege log that includes the type of document, the date, the author, the recipient, the document custodian, the file name, the subject matter/topic of the document, and the basis of the privilege in sufficient detail to permit Plaintiff (and the Court) to evaluate the merits of the claimed privilege.

The Court explained that while communication between counsel and an HR manager about a topic is potentially privileged, the topic itself is not necessarily protected from discovery, and thus must be described in the privilege log. In response to a question from Defendant's litigation counsel, David Ritter, whether the subject matter line of an email would be an adequate descriptor, the Court explained that a subject line such as "revised case summary" would not be sufficient to describe the nature and general content of a document for purposes of determining the applicability of the privilege. The Court indicated that a proper log entry could provide the file name of an attachment and/or a subject line that states, for example, "GM Awareline Report" followed by an entry with a brief description of what the document/communication is.

The Court warned that if Defendant failed to comply, the Court would consider the assertion of the attorney-client privilege to be waived, citing *Williams v. Taser Int'l. Inc.*, 274 F.R.D. 694, 697 (N.D. Ga. 2008) (finding privilege logs wholly inadequate to allow plaintiffs or the Court to evaluate the validity of the assertion of attorney-client privilege where entries in the logs failed to identify who sent or received the document, disclosed little or no information about the actual contents of the documents, and used boilerplate objections as basis for privilege).

Upon reviewing the documents in camera, the Court has serious concerns regarding whether counsel for defendant properly reviewed and marked the documents as privileged, especially in light of counsel's admissions at the discovery conference. As Mr. Ritter explained (via email and during the discovery conference), he doesn't handle the documents which are provided by General Motor's vendor after being reviewed in-house. Instead, Mr. Rit-

ter indicated his understanding was that in-house attorneys for General Motors reviewed and redacted the documents in response to Plaintiff's discovery requests and that he does not see the documents before they are produced in discovery.

The Court informed Defendant that it appeared the privilege had been improperly asserted over communications merely because an attorney had been copied. For example, the Court advised that the fact that an attorney is copied on an email does not create per se privilege, and that communications between internal HR employees are not properly subject to attorney-client privilege simply because an attorney is copied on the communication. As a result, the Court directed Defendant to go back and review the documents to reevaluate whether the privilege was properly asserted in light of the Court's directives and guidance during the conference.

On March 21, 2017, Defendant produced a revised privilege log, and identified a handful of documents for which it had removed the privilege claim. Plaintiff filed objections to the privilege log. The Court has reviewed the revised privilege log and the documents in camera anew.

## II. Discussion

### A. Attorney-client privilege

▮ The party invoking the attorney-client privilege bears the burden of proving that (1) an attorney-client relationship existed, (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance. *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991). "Neither the existence of an attorney-client relationship nor the mere exchange of information with an attorney make out a presumptive claim." *In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d 789, 799 n.15 (E.D. La. 2007) (quoting PAUL R. RICE, 2 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 11:9, pp. 78–79 (Thomson West 2d ed.1999)).

▮ The fact that a client is meeting with an attorney for the purposes of obtaining legal advice, and the general subject matter of such meeting, is not necessarily privileged. *See In re Grand Jury Proceedings*, 689 F.2d 1351, 1352–53 (11th Cir. 1982) (approving subpoena that sought "records of dates, places, or times of meetings and communications [between attorney and client], not the content of those communications" because the materials sought were not "within the scope of the attorney-client privilege"); *see also Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir. 1989) ("fact and date of consultation" with attorney is not privileged); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484–85 (D. Kan.) *on reconsideration in part*, 175 F.R.D. 321 (D. Kan. 1997) ("The subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are not protected by the privilege.")

▮ "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F.Supp.3d 1319, 1328 (N.D. Ga. 2015) (quoting *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). The "ultimate touchstone for application of the privilege ... is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *Id.* at 1329 (quoting *U.S. v. Davita*, 301 F.R.D. 676, 682 (N.D. Ga. 2014)). If one of the primary purposes of the communication is to seek legal advice, then the attorney-client privilege attaches. *Id.* (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584, (1981) ("The communications at issue were made by Upjohn employees

to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel" and were thus privileged)); *see also In re Kellogg, Brown, & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014); *In re Vioxx*, 501 F.Supp.2d at 798–99 (E.D. La. 2007) ("[M]erely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery. The lawyer's role as a lawyer must be primary to her participation" in a communication for privilege to attach.).

■ It is generally recognized that the communication of factual information is not protected by the attorney-client privilege. For example, reports reflecting the status of litigation and containing purely factual information are not privileged. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690–91 (M.D. Fla. 2005) (citing *Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y.2004) (status report with handwritten edit notes containing only factual background information were not protected). And for investigations, communications, and the like that are "of a nature that the business would ordinarily have conducted in all events," the privilege does not attach. *United States ex rel. Bibby*, 165 F.Supp.3d at 1329 (citing *U.S. v. ISS Marine Services*, 905 F.Supp.2d 121, 129–130 (D.D.C.2012) (when party initially excluded counsel from investigation but then retained them later in a "watered-down" capacity, investigation was not privileged); *In re CFS–Related Securities Fraud Litig.*, 223 F.R.D. 631 (N.D.Okla.2004) ("Business advice, unrelated to legal advice, is not protected by the privilege even though conveyed by an attorney to the client."); *see also United States v. Freeman*, 619 F.2d 1112, 1119–20 (5th Cir. 1980) ("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all

the incidents of such a transaction."); *In re Vioxx*, 501 F.Supp.2d at 805 ("Certainly, when a corporate executive makes a decision after consulting with an attorney, his decision is not privileged whether it is based on that advice or even mirrors it.").

■ As the court in *In re Vioxx* recognized,

It is often difficult to apply the attorney-client privilege in the corporate context to communications between in-house corporate counsel and those who personify the corporate entity because modern corporate counsel have become involved in all facets of the enterprises for which they work. As a consequence, in-house legal counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues.... Many courts fear that businesses will immunize internal communications from discovery by placing legal counsel in strategic corporate positions and funneling documents through counsel (viz, addressing documents to the lawyers with copies being sent to the employees with whom communications were primarily intended). As a result, courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking documents in the privilege's protection.... While this expanded role of legal counsel within corporations has increased the difficulty for judges in ruling on privilege claims, it has concurrently increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel. The burden of persuasion on all elements of claims privileges is exclusively the proponent's.

*In re Vioxx*, 501 F.Supp.2d at 797. This problem "has been exacerbated by the advent of e-mail that has made it so convenient to copy legal counsel on every com-

munication that might be seen as having some legal significance at some time, regardless of whether it is ripe for legal analysis." *Id.* at 798. But one cannot properly claim the protection of the attorney-client privilege by simply copying an attorney on an email. *See id.* at 799, 809 ("The number of lawyers or non-lawyers to whom a communication was disseminated is not dispositive" and "[a] corporation's choices of means and format in the communications between their lawyers and employees cannot limit their adversaries' right to discovery of what otherwise is non-privileged and discoverable."); *accord In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987) ("A taxpayer should not be able to invoke a privilege simply because he hires an attorney to prepare his tax returns.").

### B. Privilege Log Requirements

 Rule 26(b)(5) expressly requires a party asserting privilege to "describe the nature of the documents" not disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). *See, e.g., Williams*, 274 F.R.D. at 697; *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007). "The party asserting the attorney-client privilege . . . bears the burden to provide a factual basis for its assertions. This burden is met when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel." *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) (citing *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) (finding work product applicable where the asserting party "provided detailed privilege logs" "which for each document withheld listed the type of document, the date of creation,

the author, the recipient, the subject matter, and the applicable privilege"). Blanket and general assertions of a claim of privilege do not provide sufficient detail about the documents to enable the plaintiff or the court to determine whether the withheld documents were privileged. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005); *Williams*, 274 F.R.D. at 697; *Digecor, Inc. v. E.Digital Corp.*, 2008 WL 803108 *2 (D. Utah 2008) (privilege can only be asserted as an express claim accompanied by a detailed privilege log that can be assessed by the requesting party); *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (general allegation of privilege insufficient; if privilege is not specified and substantiated it may be lost); *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D. Ind. 1991) (requiring the log to list, for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641–642 (S.D. N.Y. 1991) (index including date, addressor, addressee, document type, and grounds for nondisclosure found insufficient).

 The court may impose as a sanction the waiver of privilege for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests by improperly withholding documents on the basis of privilege, and failing to provide an adequate privilege log in compliance with Rule 26. *Williams*, 274 F.R.D. at 697 (citing *Jones v. Am. Gen. Life and Accident Ins. Co.*, No. CV 101-003, 2002 WL 32073037, at *6 (S.D. Ga. 2002)); *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265

F.R.D. 589, 592 (N.D. Fla. 2010) (noting abundance of district court case law holding that a party claiming privilege is obliged to produce a privilege log and its failure to do so means the privilege is waived); *see also Carnes v. Crete Carrier Corp.*, 244 F.R.D. at 698 (stating that proponent of privilege cannot assert privilege in blanket fashion and holding that the failure to specify documents in privilege log constitutes a waiver of attorney-client privilege for those documents).

### C. Defendant's Production and Revised Privilege Log

 Defendant has redacted and withheld from producing in discovery over 300 pages of documents on the basis that the information contained therein is protected by attorney-client privilege. The majority of the documents are emails between General Motors human resources personnel. In the revised privilege log, Defendant generally characterizes the documents as fitting into the following five categories: (1) "attorney-client communication regarding employer-related obligations and employee requirements under certain federal laws, including the ADA and FMLA; " (2) "attorney-client communication regarding employment history of certain employees and employer obligations with respect to same; (3) "attorney-client communication regarding employment history of certain employees and internal investigation regarding same; " (4) "attorney-client communication regarding initiation of attorney engagement and fact-gathering process; " and (5) "attorney-client communication and memorandum regarding claims analysis." After being twice ordered by the Court to provide a proper privilege log, this is the only information Defendant has offered to satisfy its burden under Fed. R. Civ. P. 26(b)(5)(A) of demonstrating that the information is properly subject to a claim of privilege. Defendant utterly failed to heed this Court's express directives in the March 22, 2017 discovery conference or the legal requirements applicable to privilege logs.

First, based on the Court's in camera review of the documents, Defendant has improperly asserted the attorney-client privilege over several documents that contain purely factual information merely because in-house counsel is included in the email chain.[2] Similarly, the fact that a communication occurred (or a request for communication, i.e. a request for a meeting or conference call) is not privileged as long as the content of the communication is not disclosed. Defendant failed to undertake a good faith effort upon the Court's express urging to re-evaluate its privilege designations. Instead, the majority of documents Defendant withdrew its privilege claim on included emails where no attorney was involved in the communication. The only exceptions include Defendant's withdrawal of the privilege on an email string on which attorney Holly Georgell is cc'd as a recipient produced with the following bates numbers[3]:

---

2. Tellingly, Defendant's in-house counsel appeared to recognize that Defendant's HR department's investigation into Amber Meade's Awareline Complaint would be discoverable and thus instructed its HR personnel "just wanted to let you know that when you engage in answering the additional questions we posed yesterday, any documents or notes you take will likely be discoverable if this goes to litigation. It may make sense if you have any interviews to involve me so that we can protect the conversation as privileged." GM_Meade00000762–1(a)

3. Most of these documents are produced in duplicate form. For example, GM_Meade00002043–1(a) is a duplicate of GM_Meade00002045–1(a), GM_Meade00002047–1(a), GM_Meade00002049–1(c), GM_Meade00002050–1(d), GM_Meade00002051–2(b),

GM_Meade00002043-1(a)
GM_Meade00002128-1(a)
GM_Meade00002153-1(a)
GM_Meade00002166-2(b)
GM_Meade00002169-1(a) & (b)
GM_Meade00002171-1(a) & (b)
GM_Meade00002177-1(a),(b) & (c)

According to Plaintiff, Ms. Georgell was identified as a fact witness by Defendant and was a decision-maker who participated in Defendant's decision to terminate Plaintiff's employment.

At the same time, however, some documents are genuine attorney-client communications as defined by the above standards and are thus protected by the privilege. These documents include:

GM_Meade00000157-1(a)
GM_Meade00000159-1(b) (and duplicates at GM_Meade00000160-1(c), GM_Meade00000161-1(d), and GM_Meade00000221-1(c))
GM_Meade00000650-1(a) (and duplicates at GM_Meade00000656-1(b), GM_Meade00000657-1(c), and GM_Meade00000664-1(d))
GM_Meade00001851-1(a) (and duplicate at GM_Meade00001859-2(a))
GM_Meade00002122-1(a) (and duplicate at GM_Meade00002125-1(a))
GM_Meade00002130-1(a) (and duplicates at GM_Meade00002131-1(a), GM_Meade00002133-1(b), GM_Meade00002134-2(a), GM_Meade00002135-1(c), GM_Meade00002136-1(c), GM_Meade00002137-1(c), and GM_Meade00002138-1(c))
GM_Meade00002132-1(a) (and duplicate at 2139-1(b))
GM_Meade00002133-1(a) (and duplicates at GM_Meade00002134-1(b),

GM_Meade00002135-1(b),
GM_Meade00002136-1(b),
GM_Meade00002137-1(b), and
GM_Meade00002138-1(c))
GM_Meade00002137-1(a) (and duplicate at 2138-1(a))
GM_Meade00002185-1(a)
GM_Meade00002279-1(a) (and duplicate at GM_Meade00002281-1(a))
GM_Meade00002283-1(a)
GM_Meade00002284-1 & GM_Meade00002284-2 (and duplicate at GM_Meade00002288-1 & GM_Meade00002288-2)
GM_Meade00002285-1, GM_Meade00002285-2, & GM_Meade00002285-3 (and duplicate at GM_Meade00002289-1, GM_Meade00002289-2, & GM_Meade00002289-3)
GM_Meade00002286-1, GM_Meade00002285-2, & GM_Meade00002285-3 (and duplicate at GM_Meade00002290-1, GM_Meade00002290-2, & GM_Meade00002290-3)
GM_Meade00002287-1(a) & GM_Meade00002287-2 (and duplicate at GM_Meade00002293-1(b))
GM_Meade00002316-1(a)
GM_Meade00002318-1(a)
GM_Meade00002320-1(a)
GM_Meade00002293-1(a)
GM_Meade00002322-1(b) (and duplicate at GM_Meade00002359-1(b))
GM_Meade00002322-2(a) & (b) (and duplicate at GM_Meade00002359(a) & (b))
GM_Meade00002322-3(a) (and duplicate at GM_Meade00002359-3)
GM_Meade00002387-1(a) & (b) (and duplicate at GM_Meade00002388-1(b) & (c))

GM_Meade00002058-3(a), and GM_Meade00002063-3(b); GM_Meade00002153-1(a) is a duplicate of GM_Meade00002157-1(a),

GM_Meade00002169-1(b), GM_Meade00002171-2(a); GM_Meade00002169-1(a) is a duplicate of GM_Meade00002171-1(b), etc.

GM_Meade00002388–1(a)

■ Second, Defendant's revised privilege log is wholly inadequate to allow Plaintiff or the Court to evaluate the validity of the assertions. The log contains no explanatory information about the actual contents of the documents. Rather, Defendant uses boilerplate assertions regarding the subject matter of the documents which the Court, in the March 22 conference, advised would be deemed insufficient. During the March 22 conference, the Court directed Defendant to provide significantly more information in its revised privilege log than what was included. Despite being advised by the Court to identify and describe documents to include the titles of email file-attachments, subject matter lines, and a brief non-privileged summary of the content of the document, Defendant used broad categorical descriptions that were uninformative and misleading. For example, Defendant categorized over 180 documents (albeit many of them are duplicates of one another) as "Attorney-client communication regarding employment history of certain employees and employer obligations [and] internal investigation regarding same." But these documents do not concern the "employment history of certain employees" —they concern a single employee, Plaintiff Amber Meade, and her supervisors. Defendant has failed to submit any justification to support the individual privilege claims and has provided no independent explanations of how individual documents can be construed as providing legal advice by in-house counsel in the ordinary course of human resource management of employees. A proponent of privilege "cannot reasonably expect [the court] to make this assessment for it on either a document-by-document basis or universally through a presumption that everything in-house counsel comments upon is legal advice." *In re Vioxx*, 501 F.Supp.2d at 807.

Defendant's conduct in this case in asserting an overly broad claim of attorney-client privilege and failing to produce a proper privilege log after twice being ordered by the Court to do so was improper, obstructive, and undertaken in bad faith in order to avoid its discovery obligations. Accordingly, the Court finds that Defendant has waived its attorney-client privilege as to all documents other than those specifically identified above at pages 14–15 as being properly subject to the privilege, and **ORDERS** Defendant to **IMMEDIATELY (NOT LATER THAN APRIL 24, 2017)** provide Plaintiff immediate electronic access to the documents before the scheduled deposition on April 25, 2017.

**IT IS SO ORDERED** this 21st day of April, 2017.